UNITED STATES of America,
Plaintiff–Appellee,

v.

Merlin J. BORDELON,
Defendant–Appellant.

No. 88–3367.

United States Court of Appeals,
Fifth Circuit.

April 13, 1989.

**492**

Roma A. Kent, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La., for defendant-appellant.

Robert J. Boitmann, Asst. U.S. Atty., John Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before RUBIN, POLITZ, and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of eight counts of violating 18 U.S.C. §§ 371, 208, and 209, Merlin J. Bordelon appeals, contending that the evidence was insufficient to support the guilty verdicts. Our review of the record persuades otherwise and we affirm the convictions.

### Background

Bordelon was employed by the Department of Housing and Urban Development (HUD) as Director of Fair Housing and Equal Opportunity for the New Orleans area office. In March 1984, Bordelon, Dimitra Dellas, Charlene Alexander, and Phillip Mason met to discuss organizing a corporation to be known as Federal Communications Bureau, Inc. (FCB), for the purpose of commercially producing video tapes reviewing various government regulations, including fair housing requirements. It was agreed that Bordelon would receive $3,000 per month from FCB as a silent partner. Dellas was to receive a $2,500 monthly salary. In addition, Bordelon and Alexander each were to receive $5,625 as reimbursement for a feasibility study on the development of FCB. All payments to Bordelon were to be made through Dellas. At trial Alexander and FCB's accountant testified that Bordelon told them the reason he wanted his payments concealed was to protect his HUD promotion status.

Bordelon prevailed upon Antonio Monroig, Assistant Secretary of HUD, to appear in the FCB video on fair housing. Monroig agreed to make the introductory and concluding remarks, believing that the video was for government or non-profit purposes. He testified that he would not have participated had he known that the video was being made as a commercial venture. He further testified that when the for-profit nature came to his attention he instructed Bordelon to prevent release until Bordelon had consulted with HUD's general counsel about the propriety of Monroig's appearance. Monroig also testified that Bordelon subsequently assured him that the general counsel had approved his participation. Bordelon denied that Monroig had raised the question of the propriety of his appearance in the video or had directed him to discuss the matter with the department's general counsel. It fell to the jury to credit the testimony of one or the other.

In addition to the monthly salary from FCB, Bordelon received $9,750 from the corporation for a van he ostensibly sold to the corporation. Title to the van was never transferred to FCB; instead, it was used by Bordelon as a trade-in on a motor home. Bordelon's promises to repay this sum to FCB were never kept.

In early 1985, at Bordelon's initiative communities receiving HUD block grants were directed to hold two seminars each year on fair housing in order to maintain their eligibility for HUD grants. When community directors inquired about the requirement, Bordelon recommended Dellas to conduct the seminars, a recommendation which violated HUD regulations.

The evidence established a link between the money Dellas received for conducting the fair housing seminars and payments on the motor home purchased by Bordelon. From December 1984 to July 1985 money order payments on the motor home were traceable to Dellas' account. During that period Dellas received a sum larger than the monthly motor home payments for conducting the seminars. For several months, starting in August 1985, Dellas received no seminar payments. During those months the motor home payments were made from Bordelon's personal account. When the seminar payments resumed, the motor home payments again were made by money orders linked to withdrawals from Dellas' account.

Bordelon was indicted for conspiring to defraud the United States of money and property in violation of 18 U.S.C. § 371, for defrauding the United States of money and property in violation of 18 U.S.C. § 208, and for knowingly receiving supplementation of his government salary in violation of 18 U.S.C. § 209. Dellas was charged with conspiracy and with aiding and abetting Bordelon on the substantive counts. Both were convicted by a jury on all counts. Bordelon was sentenced to two years imprisonment and assessed $250. He appeals.

*Analysis*

Bordelon contends that the evidence was insufficient to support the guilty verdicts. In evaluating the sufficiency of evidence we must consider the evidence in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices which support the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The evidence is sufficient if a rational trier-of-fact could have found the essential elements of the charged crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Count 1 charges that Bordelon conspired to defraud the United States by concealing his interest in FCB in violation of 18 U.S.C. § 371. A section 371 conspiracy requires an agreement between two or more persons to commit a crime and an overt act by at least one in furtherance of the agreement. *United States v. Graves,* 669 F.2d 964 (5th Cir.1982). The government must prove beyond a reasonable doubt that the defendant knew of the conspiracy and voluntarily joined it. *United States v. Tullos,* 868 F.2d 689 (5th Cir. 1989). The same degree of criminal intent

necessary for the underlying substantive offense must also be proven. *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).

■ Joinder is the essence of the crime of conspiracy. It is not possible for one person to conspire, notwithstanding his own guilty state of mind, unless another person shares the guilty knowledge and design. *Morrison v. California*, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934) ("conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each"). Where only one party to the agreement possesses the required criminal intent, there has been no violation of the conspiracy statute.[1]

■ Bordelon does not deny that he was aware of the unlawfulness of his conduct, but claims that he cannot be convicted of conspiracy because his coconspirator, Dellas, did not possess the requisite mental state. We do not agree. The government need not prove her awareness of specific regulations, nor need it introduce evidence that would conclusively demonstrate her state of mind. It suffices to show facts and circumstances from which the jury reasonably could infer that she knew her conduct was unauthorized and illegal. Dellas' actions, including inscribing the notes of the meeting at which the organization of FCB and its operations were agreed upon, her directions to the CPA who maintained the corporation's formal minutes to delete all references to Bordelon, and her receipt from FCB of the payments for herself and for Bordelon, including two salary checks twice monthly, one to her for $1,250 representing one-half of her monthly salary, and one to her for $1,500 representing one-half of Bordelon's monthly salary, provided the jury with the basis upon which it reasonably could infer that she knew of the unlawfulness of Bordelon's conduct. The evidence of this conspiracy count is sufficient.

■ In Count 2, Bordelon is charged with causing Monroig to appear in a video produced for profit by FCB, a corporation in which Bordelon had an interest, in violation of 18 U.S.C. § 208.[2] Rather than being insufficient, the evidence supporting this violation abounds. Bordelon was entirely responsible for persuading Monroig, in his official capacity, to appear in the video which FCB marketed. Bordelon obviously had a substantial financial interest in FCB. Although he maintains that the entire matter was cleared with the general counsel of HUD, the record provides scant support for that contention. The evidence supports this conviction.

■ Count 3 charges Bordelon with violating 18 U.S.C. § 209 by receiving from FCB supplementation of his government salary.[3] The corporate records and the testimony of the other participants in FCB clearly established that the $5,625 reimbursement payment, and the twice-monthly $1,500 checks to Dellas, were for Bordelon.

---

1. In *Sears v. United States*, 343 F.2d 139, 142 (5th Cir.1965), we established the rule that "as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy." This principle was explained:

   Since the act of agreeing is a group act, unless at least two people commit it, no one does. When one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone. Although he may possess the requisite criminal intent, there has been no criminal act. *Developments in the Law—Criminal Conspiracy*, 72 Harv.L.Rev. 920, 926 (1959). In short, the requirements of the crime of conspiracy have not been met unless an individual conspires with at least one other conspirator who shares the criminal intent. *United States v. Escobar de Bright*, 742 F.2d 1196 (9th Cir.1984).

2. 18 U.S.C. § 208 provides in pertinent part:

   [W]hoever, being an officer or employee of the executive branch of the United States Government ... participates personally and substantially as a Government officer or employee, through decision ... recommendation ... or otherwise, in a ... particular matter in which, to his knowledge, he ... has a financial interest—

   Shall be fined not more than $10,000, or imprisoned not more than two years, or both.

3. 18 U.S.C. § 209 provides in pertinent part:

   Whoever receives any salary, or any ... supplementation of salary, as compensation for his services as an ... employee of ... the United States ... from any source other than the Government of the United States, ...

   Shall be fined not more than $5000 or imprisoned not more than one year, or both.

It was not necessary for the government to adduce direct evidence that Bordelon actually received the money. The jury reasonably could so infer. *See United States v. Fitzharris,* 633 F.2d 416 (5th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981).

Count 4, which charged a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and Counts 5–8, which charged acts affecting a personal financial interest in violation of 18 U.S.C. § 208, relate to Bordelon's scheme to profit by having local communities contract with Dellas for the fair housing seminars he caused to be mandated. As to Count 4, the evidence fully supports the conclusion that Bordelon used his position to persuade state and local officials to award federally funded consultant contracts to Dellas, who in turn shared the proceeds with Bordelon. *See United States v. Burgin,* 621 F.2d 1352 (5th Cir.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). As to Counts 5–8, Bordelon's contention that he had no financial interest in the seminar contracts is not persuasive. HUD funds were used to pay for the seminars and a portion of the payments were routed to retire the debt on Bordelon's motor home. The jury was free to accept or reject, as it apparently did, Bordelon's assertion that Dellas purchased the questioned money orders with cash he kept in his home.

The convictions are AFFIRMED.