**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Angela Faye ONICK and Alvin Tolliver,**
**Defendants–Appellants.**

No. 89–1063.

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 23, 1990.

As Amended Feb. 6, 1990.

Richard L. Bourland, Fort Worth, Tex. (Court-appointed), for Onick.

Alvin Tolliver, Seagoville, Tex., pro se.

Frederick M. Schattman, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GOLDBERG, POLITZ and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

## I.  STATEMENT OF FACTS.

During an early morning in March, 1988, police searched a house in Fort Worth, Texas. They found illegal drugs (heroin and cocaine) and drug paraphernalia (blenders, sifters, mannitol, and 4,063 empty gelatin caps) concealed throughout the house. The police also found numerous guns and $80,000 in cash hidden in clothing and a safe. Although the police expected to find Alvin Tolliver in the house and did find him there, they were surprised to find Angela Onick as well. The police promptly arrested both Onick and Tolliver.

A jury convicted Onick and Tolliver of possessing heroin and cocaine with the intent to distribute; knowingly maintaining a place to manufacture drugs; using firearms in a drug trafficking crime; and conspiring to distribute more than 100 grams of heroin and more than 500 grams of cocaine. Both were sentenced to prison terms. The judge sentenced Tolliver to an additional term for committing these crimes while released on bail.

Both Onick and Tolliver now appeal. They argue that the evidence is insufficient to support their convictions. Tolliver also challenges his additional sentence for committing these crimes while released on bail and argues that he lacked effective assistance of counsel at trial.

We reverse Onick's convictions. We affirm Tolliver's convictions for possessing heroin and cocaine with the intent to distribute; maintaining a place to manufacture drugs; and using firearms in a drug trafficking crime; but reverse his conspiracy conviction. We also vacate Tolliver's sentence for committing these crimes while released on bail.

## II.  SUFFICIENCY OF THE EVIDENCE CLAIMS.

Onick and Tolliver argue that the government's evidence is insufficient to support their convictions. The applicable standard of review requires us to view the evidence in the light most favorable to the prevailing party, *Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), to determine whether the government proved all elements of the crimes beyond a reasonable doubt. *See U.S. v. Barrera*, 547 F.2d 1250, 1255 (5th Cir.1977). If a reasonable jury would doubt whether the evidence proves an essential element, we must reverse. *Id.*

## A. Possession with the Intent to Distribute.

To convict Onick and Tolliver for possession with the intent to distribute, the jury had to find that each defendant (1) possessed illegal drugs (2) knowingly, and (3) intended to distribute those drugs. 21 U.S.C. Section 841(a)(1); *see U.S. v. Galvan–Garcia*, 872 F.2d 638, 640 (5th Cir. 1989). Possession may be actual or constructive and may be proved by direct or circumstantial evidence. *U.S. v. Gardea Carrasco*, 830 F.2d 41, 45 (5th Cir.1987). Constructive possession is defined as ownership, dominion, or control over illegal drugs *or* dominion over the premises where drugs are found. *See U.S. v. Thompson*, 700 F.2d 944, 952 (5th Cir.1983); *U.S. v. Salinas–Salinas*, 555 F.2d 470, 473 (5th Cir.1977).

### 1. Onick.

A reasonable jury could not conclude that the evidence establishes an essential element, possession, necessary to convict Onick of possession with the intent to distribute. Only four pieces of evidence connect Onick to this case. First, the police discovered Onick on the premises dressed in her nightclothes when they searched the house. Second, a bedroom closet contained women's clothing. Third, a bedroom contained a photograph of Tolliver, Onick, and an unidentified man. Fourth, a locksmith testified that several months before the arrests in this case, Onick showed him where to install a safe on the premises, paid for the safe, asked him to make the receipt out to "Al" (Tolliver's nickname), and accepted the card with the safe combination on it.

This evidence does not show that Onick *actually* possessed the drugs. She did not carry drugs. The room in which she sat contained no drugs nor drug paraphernalia. No one testified that Onick possessed any drugs when the police searched the house or at any other time.

Nor does the evidence demonstrate that Onick *constructively* possessed the drugs. At most, the evidence permits us to infer that Onick associated with Tolliver, visited Tolliver for the night, knew that the house contained a safe, and knew the safe combination. A reasonable jury could not conclude that Onick exercised dominion and control over the premises or the drugs themselves even if it drew these inferences from the evidence.

We will not lightly impute dominion or control (and hence constructive possession) to one found in another person's house. *See U.S. v. Watkins*, 519 F.2d 294, 296 n. 6 (D.C.Cir.1975). The evidence indicates that Onick was in another person's house. No evidence establishes that she lived in the house. In fact, the officers who searched the property told the jury that they did not expect to find Onick there. Because she was in another person's house, we will not lightly impute dominion or control to Onick. Given the paucity of the evidence against Onick, we will not impute dominion or control over the drugs or the premises to Onick.

For the jury to impute dominion or control to Onick, it must have *speculated* Onick into a conviction. This it cannot do. Nor may it pile inference upon inference to convict Onick, even though it may infer conclusions from the evidence before it. *See Causey v. U.S.*, 352 F.2d 203, 207 (5th Cir.1965); *U.S. v. Franklin*, 586 F.2d 560, 572 (5th Cir.1978); *U.S. v. Jackson*, 426 F.2d 305, 309 (5th Cir.1970). The jury must limit itself to reasonable constructions of the evidence. *U.S. v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Our finding that the evidence does not establish constructive possession accords with previous constructive possession cases. Of course, we examine the merits of each constructive possession case independently; previous cases serve as illustration only. *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir.1983). For example, we held that a defendant's presence in a house on his father's property which the defendant may have occupied and where his father stored illegal drugs did not support a narcotics conviction. *U.S. v. Sneed*, 705 F.2d 745 (5th Cir.1983). In this case, the evidence

does not even indicate that Onick occupied the house. Likewise, we held that mere presence in a room with a person who possessed illegal drugs and knowledge about a drug sale did not establish constructive possession. *U.S. v. Martin*, 483 F.2d 974 (5th Cir.1973). In this case Onick did not know about a drug sale, nor did she sit in the same room with Tolliver or anyone else who possessed illegal drugs.

Because the evidence so poorly links Onick to the premises and the drugs, a reasonable jury simply could not find that Onick exercised dominion or control over either. Therefore, a reasonable jury could not find that Onick constructively possessed the illegal drugs.

Because the evidence cannot support a jury finding that Onick possessed the illegal drugs, we need not consider the other two essential elements, knowledge and intent, necessary to convict Onick of possessing drugs with the intent to distribute. Nevertheless, we note that nothing in the record supports a finding that Onick knowingly possessed or intended to distribute the drugs.

### a. *Lesser Included Charge.*

■ The district judge in this case properly instructed the jury that if it did not find Onick guilty of knowing possession with the intent to distribute, it could find her guilty of the lesser included charge of simple possession. *See U.S. v. Sheikh*, 654 F.2d 1057, 1067 n. 8 (5th Cir.1981); Fed.R. Crim.P. 31(c). To support a simple possession conviction the evidence must show knowing possession. *U.S. v. Holloway*, 744 F.2d 527, 531–532 (6th Cir.1984); 21 U.S.C. Section 844 (1988). However, nothing in the record supports a finding that Onick knew about the drugs or constructively possessed the illegal drugs. Because the evidence does not establish knowing possession, we need not consider whether to remand this case for a new trial on the simple possession charge.

### 2. Tolliver.

#### a. *Possession.*

■ A reasonable jury could not find that Tolliver *actually* possessed the drugs, but could infer that Tolliver *constructively* possessed the drugs. The police found numerous receipts made out to Tolliver at the house address. They also found papers belonging to Tolliver, clothes labeled with his nickname, and prescription bottles in his name. In addition, Tolliver selected clothing from one of the closets to wear to the police station. Based on this evidence, the jury could conclude that Tolliver lived in the house and exercised dominion and control over the premises and the drugs. *See U.S. v. Robinson*, 857 F.2d 1006, 1008 (5th Cir.1988); *U.S. v. Castillo*, 866 F.2d 1071, 1088 (9th Cir.1988). Evidence establishing dominion and control establishes that Tolliver *constructively* possessed the illegal drugs.

#### b. *Knowledge.*

■ Based on the evidence, a reasonable jury could infer that Tolliver knew about the drugs and drug paraphernalia hidden throughout his house. The jury could infer that Tolliver came across the drugs and drug paraphernalia scattered in various kitchen cabinets and drawers when he used the kitchen. Likewise, the jury could infer that Tolliver came across other drugs and drug paraphernalia stashed away in various cubbyholes at one time or another as he used various rooms and closets.

#### c. *Intent to Distribute.*

■ Based on the evidence, a reasonable jury could infer that Tolliver intended to distribute illegal narcotics. Police found a large number of empty gelcaps used to package drugs, items used to measure and package illegal narcotics, and a small amount of cocaine and heroin in the house. The large number of gelcaps (4,063) provides the strongest basis from which to infer intent. A witness testified that dealers package drugs in these gelcaps for street distribution. No witness suggested any alternative legitimate use.

The other drug paraphernalia and mannitol (used to dilute cocaine for street distribution) scattered throughout the house support the inference that Tolliver intended

to distribute illegal drugs as does the presence of drugs themselves. *See U.S. v. Smith*, 840 F.2d 886, 888 (11th Cir.1988). While the jury could not infer intent from the small amount of heroin and cocaine (7.7 grams) alone, it could infer intent from the combination of the drugs with the drug paraphernalia, particularly the 4,063 empty gelcaps. *Compare U.S. v. Ehlebracht*, 693 F.2d 333, 339 (5th Cir.1982) (113 grams of cocaine enough to infer intent) *with U.S. v. Olvera*, 523 F.2d 1252, 1253 (5th Cir.1975) (1.84 grams of cocaine not enough to infer intent).

B. *Maintaining a Place to Manufacture, Distribute, or Use Drugs.*

■ To convict Onick or Tolliver for maintaining a place to manufacture, distribute, or use drugs, the jury had to find that each defendant (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance. 21 U.S.C. Section 856(a)(1) (1986).[1]

1. Onick.

■ No evidence suggests that Onick knew about the drugs and drug paraphernalia, maintained the premises, or intended to manufacture, distribute, or use drugs. As we noted above, the evidence does not even show that Onick lived on the premises.[2] No reasonable jury could interpret the evidence to establish any of the three required elements. Therefore, no reasonable jury could convict Onick for maintaining a place to manufacture, distribute, or use drugs.

2. Tolliver.

■ A reasonable jury could find that Tolliver knowingly maintained a place to manufacture, distribute, or use drugs. Beginning with the premise that Tolliver lived in the house,[3] the jury first could infer that Tolliver came across and therefore *knew* about the drugs and drug paraphernalia scattered throughout the house. Second, the jury could infer that Tolliver *maintained* the house because he lived there. Third, based on the large quantity of drug paraphernalia used to measure and package drugs (particularly the 4,063 gelcaps), the jury could infer that Tolliver intended to use the property to distribute drugs. Therefore, a reasonable jury could convict Tolliver for knowingly maintaining a place to manufacture, distribute, or use drugs.

C. *Using a Firearm in a Drug Trafficking Crime.*

■ To convict Onick and Tolliver for using a firearm in a drug trafficking crime, the jury had to find that the two (1) during or in relationship to any drug trafficking crime (2) used or carried (3) a firearm. 18 U.S.C. Section 924(c)(1) (1988).

1. Onick.

■ Because we reverse Onick's drug trafficking convictions (possession with intent to distribute and maintaining a place to manufacture drugs), we also must reverse her conviction for using a firearm in a drug trafficking crime. Onick is not guilty of the predicate act, a drug trafficking crime, necessary for a conviction under this statute.

2. Tolliver.

■ A reasonable jury could find that Tolliver used a firearm in a drug trafficking crime. Possessing illegal drugs with the intent to distribute constitutes a drug trafficking crime for the purpose of the statute. *Robinson*, 857 F.2d at 1010; *U.S. v. Coburn*, 876 F.2d 372, 375–376 (5th Cir.1989). Therefore, Tolliver's conviction

---

**1.** The jury could also convict Onick and Tolliver under this statute if it found that either managed or controlled any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rented, leased, or made available for use, with or without compensation, the building, room or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance. 21 U.S.C. Section 856(a)(2) (1986).

**2.** We do not mean to suggest that living on the premises is either necessary or sufficient for conviction under this statute.

**3.** See our discussion above.

for possessing with the intent to distribute establishes the first element.

Accessibility to a firearm to protect Tolliver's drug trafficking establishes the second element. *See U.S. v. Raborn*, 872 F.2d 589, 595 (5th Cir.1989); *Robinson*, 857 F.2d at 1010; *U.S. v. Matra*, 841 F.2d 837 at 843 (8th Cir.1988); *but see U.S. v. Robertson*, 706 F.2d 253, 255–256 (8th Cir.1983). Use or possession of the firearm must relate to the underlying drug trafficking offense. S.Rep. No. 225, 98th Cong., 2nd Sess. 312, 314 (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10 *cited and discussed in Coburn*, 876 F.2d at 375. However, Tolliver need not use or brandish a weapon as long as the firearm could facilitate the commission of a crime. *Id.* The weapons in the house could facilitate the commission of a crime because Tolliver could use the guns to protect the drugs and drug paraphernalia. *See id.; Raborn*, 872 F.2d at 595. In particular, Tolliver could use the weapons to ward off threats to his drug operation.

Finally, the presence of numerous firearms throughout the house establishes the third element. Because the evidence establishes all three elements, a reasonable jury could find that Tolliver used a firearm in a drug trafficking crime.

### D. *Conspiracy.*

■■■■■ To convict Onick and Tolliver of conspiring to manufacture drugs, the jury had to find that they (1) agreed to violate the narcotics laws, (2) knew of the conspiracy, and (3) knowingly and voluntarily joined the conspiracy. 21 U.S.C. Section 846 (1988); *see, e.g., U.S. v. Gonzales*, 866 F.2d 781, 787 (5th Cir.1989); *U.S. v. Espinoza–Seanez*, 862 F.2d 526, 536 (5th Cir. 1988); *U.S. v. Bland*, 653 F.2d 989, 996 (5th Cir.1981). The defendants need not commit an overt act in drug conspiracy cases. *U.S. v. Mollier*, 853 F.2d 1169, 1172 (5th Cir. 1988). Circumstantial evidence can sup-

port a conspiracy conviction. *U.S. v. Yamin*, 868 F.2d 130, 133 (5th Cir.1989).

### 1. Onick.

■■■ No reasonable jury could find that Onick conspired to manufacture drugs. Onick's association with Tolliver will not support a conspiracy conviction; *see U.S. v. Ascarrunz*, 838 F.2d 759, 763 (5th Cir. 1988); nor will her mere presence in the house. *Espinoza–Seanez*, 862 F.2d at 537. At a minimum, evidence of a tacit agreement must exist. *See U.S. v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988).

However, neither the direct nor the circumstantial evidence in this case shows that Onick and Tolliver agreed to violate the narcotics laws. In fact, the evidence does not even show that Onick knew that the house contained drugs and drug paraphernalia. Therefore, a reasonable jury could not find that Onick conspired to manufacture drugs.

### 2. Tolliver.

■■■ This circuit usually will not uphold a conviction of one defendant in a conspiracy prosecution when a jury acquits the other alleged coconspirators. *Sheik*, 654 F.2d at 1062. However, a jury can convict a defendant of conspiring with persons whose names are unknown or who have not been tried and acquitted, if the indictment charges a conspiracy with unknown persons and evidence supports their existence and the existence of a conspiracy. *U.S. v. Price*, 869 F.2d 801, 804 (5th Cir.1989); *Sheik*, 654 F.2d at 1062. The indictment in this case charges Tolliver with conspiring both with Onick and unknown persons. The jury did not acquit either Tolliver or Onick. Nevertheless, the evidence does not support the existence of a conspiracy between Tolliver and Onick. Nor does it support the existence of unknown persons nor the existence of a conspiracy between Tolliver and unknown persons. Therefore, we must reverse Tolliver's conspiracy conviction due to insufficiency of the evidence.[4]

---

**4.** Tolliver cannot conspire on his own, even if he possesses a guilty state of mind. *See U.S. v.*

*Bordelon*, 871 F.2d 491, 494 (5th Cir.1989).

## III. TOLLIVER'S BAIL REFORM ACT CLAIM.

When arrested for the crimes tried in this case, Tolliver was on bond awaiting a new trial on previous narcotics charges. While Tolliver was on bond, but before the police arrested him in this case, Congress passed the Bail Reform Act of 1984, 18 U.S.C. Sections 3141 *et seq.*

Section 3142(h)(2)(A) of the Act requires the releasing judge to advise the person of "the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release." Section 3147 mandates a sentence "of not more than ten years" for persons who commit felony offenses while released on bail.[5] The Act does not expressly require the releasing court to comply with the notice requirement in Section 3142 before a sentencing court may impose penalties under Section 3147.

█ Tolliver argues that the district court may not impose the additional sentence mandated by Section 3147 because no one notified him of the consequences of violating the law while on bail for the narcotics charges in the first case as Section 3142(h)(2)(A) requires.[6] The government counters by pointing out that authorities did notify Tolliver of the consequences of violating the law in an order releasing Tolliver. The order setting the conditions of Tolliver's release states:

> If the defendant violates any condition of his release, a warrant for his arrest will issue immediately. After arrest, the terms and conditions of any further release will be redetermined.

This order does not comply fully with Section 3142(h)(2).[7] It did advise Tolliver of "the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's ar-

rest" as Section 3142(h)(2)(*B*) requires. However, it did not advise Tolliver of "the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release" as Section 3142(h)(2)(*A*) requires. In fact, the order does not discuss penalties at all. It merely warns Tolliver that the judge will redetermine the terms and conditions of his release if he violates any condition of his release. Therefore, the order failed to notify Tolliver of the additional punishment that Section 3147 imposes.

█ Because the order failed to notify Tolliver of additional penalties as Section 3142(h)(2)(A) requires, we must determine whether the sentencing court may apply Section 3147 when the releasing court fails to comply with Section 3142(h)(2)(A). Both provisions relate to the same subject: release and detention pending judicial proceedings. Section 3142(h)(2)(A) applies when a court releases a defendant on bond, while Section 3147 applies when the defendant violates the bond conditions. These two provisions operate *in pari materia* and should not be read in isolation, *see Sutton v. U.S.*, 819 F.2d 1289, 1293 (5th Cir.1989), nor "word by separate word or clause by isolated clause." *Powell v. C.I.R.*, 791 F.2d 385, 390 (5th Cir.1986). Therefore, we construe Sections 3142(h)(2)(A) and 3147 together. If we do not construe them together, we eviscerate Section 3142(h)(2)(A) from the law in all cases where the releasing judge fails to comply. This we cannot do. We assume that Congress intended both provisions to have meaningful effect. *See Sutton*, 819 F.2d at 1295. By construing these two provisions together, we conclude that the releasing judge *must* comply with Section 3142(h)(2)(A) before the sentencing judge may apply Section 3147.

**5.** The original version of Section 3147 mandated a two to ten year prison term for persons who commit offenses while released on bail. Congress amended Section 3147 effective November 1, 1987 by deleting the phrase "not less than two years and." Pub.L. 98–473, Title II, Section 223(g), Oct. 12, 1984, 98 Stat. 2028. The amended version applies here.

**6.** Tolliver also argues that the additional penalties violate the ex post facto clause in Article 1, Section 9 of the Constitution. Because we decide this case on statutory grounds, we need not reach the constitutional question.

**7.** The releasing judge did not comply with the Section 3142(h)(2)(A) because Congress had not yet enacted that provision into law.

The legislative history of the Bail Reform Act supports our conclusion that the releasing judge must comply with Section 3142(h)(2)(A) before the sentencing judge may impose additional penalties under Section 3147. Congress modeled the Bail Reform Act on the District of Columbia's Release and Detention statute, D.C.Code Ann. Sections 23–1321 *et seq.* S.Rep. No. 225, 98th Cong., 2d Sess. (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3188, 3190–3191, 3195, 3203–3204, 3209 *cited in U.S. v. Cooper,* 827 F.2d 991, 994 (4th Cir.1987).[8] Section 23–1321(d) of the D.C. statute requires that the "judicial officer authorizing the release shall inform such person of the penalties applicable to violations of the conditions of his release" and "shall warn such person" of the enhanced penalties if convicted of a crime committed while released. Section 23–1328 of the D.C. statute mandates additional penalties for persons convicted of offenses while on release.

Sections 3142 and 3147 of the federal statute track Sections 23–1321(d) and 23–1328 of the D.C. statute. However, the federal statute omits a clause found in the D.C. statute. Section 23–1328(b) of the D.C. statute states: "The giving of a warning to the person when released of the penalties imposed by this section shall not be a prerequisite to the application of this section." Section 3147 of the Bail Reform Act lacks this provision. Congress's failure to include the provision suggests that Congress intended to require notification upon release before a judge may apply the penalties listed in Section 3147.

Comments in the Senate Judiciary Committee report support this interpretation. The Committee explains that failure to comply with Section 3142(h)(2)(A) does not bar or defend prosecution for bail jumping under Section 3146 or witness tampering under 18 U.S.C. Sections 1503, 1510, 1512, and 1513. S.Rep. No. 225, 98th Cong., 2d Sess. (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3208. The report does *not* state that failure to comply with Section 3142(h)(2)(A) does not bar or defend imposition of an enhanced sentence under Section 3147. Given these express references to other laws but not to Section 3147, we will not assume that Congress intended courts to ignore a facially mandatory provision, Section 3142(h)(2)(A), when deciding whether to apply another facially mandatory provision, Section 3147.

Previous decisions also support our interpretation. While this circuit has never considered the issue, two other courts of appeals held that the Bail Reform Act precludes sentencing a person under Section 3147 if the authorities did not advise that person of the penalties for committing an offense while released. *U.S. v. DiCaro,* 852 F.2d 259 (7th Cir.1988); *Cooper,* 827 F.2d 991. Both relied on the legislative history of the Act. In addition, the *DiCaro* court refused to render Section 3142(h)(2)(A) superfluous "[i]n the absence of any congressional indication that failure to give this warning carries no consequence." *DiCaro,* 852 F.2d at 265.

In conclusion, based on the Bail Reform Act's plain language, the Act's legislative

8. Section 23–1321(d) of the D.C. statute states: A judicial officer authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release, shall advise him that a warrant for his arrest will be issued immediately upon any such violation, and shall warn such person of the penalties provided in section 23–1328.
Section 23–1328 of the D.C. statute states:
(a) Any person convicted of an offense committed while on release pursuant to section 23–1321 shall be subject to the following penalties in addition to any other applicable penalties:

(1) A term of imprisonment of not less than one year and not more than five years if convicted of committing a felony while so released; and
(2) A term of imprisonment of not less than ninety days and not more than one year if convicted of committing a misdemeanor while so released.
(b) The giving of a warning to the person when released of the penalties imposed by this section shall not be a prerequisite to the application of this section.
(c) Any term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment.

history, and other circuit court decisions, we find that the releasing judge must comply with Section 3142(h)(2)(A) before the sentencing judge may apply Section 3147. In this case, the releasing judge did not comply with Section 3142(h)(2)(A). Therefore, we vacate Tolliver's sentence imposed under Section 3147 of the Bail Reform Act.

## IV. TOLLIVER'S SIXTH AMENDMENT CLAIM.

We can grant relief to Tolliver for ineffective assistance of counsel only if (1) his lawyer performed so deficiently that he did not act as Tolliver's counsel as guaranteed by the Sixth Amendment and (2) the deficient performance prejudiced Tolliver's right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nothing in the record indicates that Tolliver's counsel performed deficiently or that his lawyer's performance prejudiced Tolliver's right to a fair trial. Therefore, we deny Tolliver's motion for a new trial.

## V. CONCLUSION.

Tolliver also challenges the district court's application of the sentencing guidelines to this case. We have examined the record and find no error here. In addition, Tolliver raises several other grounds for relief. We carefully examined the record and find no other basis for relief.

In summary, we reverse Onick's convictions, affirm Tolliver's narcotics and firearms convictions, but reverse his conspiracy conviction and vacate the additional sentence for committing these crimes while released on bail.