REVISED December 4, 2009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

November 13, 2009

Charles R. Fulbruge III
Clerk

No. 08-51008

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ROBERT DELENO HENDERSON

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-66-ALL

Before BENAVIDES, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant Robert Deleno Henderson ("Henderson") was convicted by a jury of one count of possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) & (c)(1). Because the evidence was insufficient for a reasonable jury to find Henderson guilty beyond a reasonable doubt, see Jackson v. Virginia, 443 U.S. 307 (1979), we now VACATE the conviction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

\*\*\*

On February 11 or 12, 2008, deputies from the Ector County Sheriff's Office, including Abel Sanchez ("Sanchez"), received a tip from a confidential informant that an African-American man named "Chytown" was selling crack cocaine in Room 529 at the Super Inn & Suites in Odessa, Texas ("Super Inn" or "the motel"). Due to this tip, Sanchez conducted surveillance in the parking lot of the Super Inn. From his position in the parking lot he observed a convicted drug dealer named Chaviya Antwan Hammond ("Hammond"), sometimes known as "Chytown,"[1] pull up in a white Cadillac with three other individuals. Sanchez could not testify as to whether Hammond entered Room 529, but he did testify that after "a few minutes" the white Cadillac left the motel. Sanchez followed the Cadillac to Hammond's residence. After conducting the surveillance Sanchez received a phone call from a second confidential informant, who told him that a friend had told the informant that "Chytown" was selling crack from Room 529.

Based on the information obtained from the surveillance and the confidential informants, Sanchez obtained a warrant for Room 529. At the point at which he obtained the search warrant, Sanchez was aware that Room 529 was being rented by someone named Michael John Haverstock, a white male. Accompanied by three other officers, Sanchez executed the warrant on Room 529 on February 12, 2008. The officers found four people in Room 529: Henderson; Henderson's ex-girlfriend and the mother of his son, Tracy Hernandez; Kristina Garcia, with whom Henderson had recently been romantically involved; and Deric Leavitt. The police arrested Henderson and Garcia; only Henderson was ultimately charged. Henderson was convicted by a jury on September 26, 2008 and sentenced to 84 months imprisonment and six years of supervised release.

---

[1] The officer testified that Hammond was known as "Chytown"; one of the motel clerks testified that drug dealers in the area were often known as "Chytown."

He timely filed this appeal, challenging the sufficiency of the evidence to support his conviction.[2]

Because Henderson moved for a post-verdict judgment of acquittal he preserved his claim as to the sufficiency of the evidence to support his conviction, and we therefore review his claim de novo. United States v. Harris, 566 F.3d 422, 435 (5th Cir. 2009). We review the evidence "in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the trial court," and any conflicts in the evidence must be resolved in favor of the jury's verdict. United States v. Lee, 217 F.3d 284, 288 (5th Cir. 2000). However, "the standard of review in assessing a challenge to the sufficiency of the evidence in a criminal case is whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Megerson, 4 F.3d 337, 341 (5th Cir. 1993) (internal quotation marks and citation omitted). The question, in other words, is "not whether [the defendant] could have been guilty, but instead whether a reasonable jury could find no reasonable doubt as to [the defendant's] guilt." United States v. Reveles, 190 F.3d 678, 690 (5th Cir. 1999).

Henderson was charged with possession of heroin with intent to distribute. To prove this offense, the Government must prove that the defendant (1) knowingly (2) possessed the substance in question (3) with the intent to distribute it. United States v. Molinar-Apodaca, 889 F.2d 1417, 1423 (5th Cir. 1989). Possession may be actual or constructive, and may be proved by direct or circumstantial evidence. Id.

The officers found evidence that someone possessed heroin with the intent to distribute in the motel suite. The motel suite had one bedroom, a vanity area, a kitchen area, and a small living area. Underneath the bathroom sink the

---

[2] Henderson also challenged on appeal a ruling by the district court not to force the Government to disclose the identities of the confidential informants involved in the case. Because we vacate Henderson's conviction for insufficiency of the evidence we need not reach this issue.

officers found a safe, which was closed but not locked, inside of which were 16 or 17 one-gram pieces of heroin wrapped in tin foil, and two scales.[3] In the living area the officers found a crack pipe, and under the bed they found Brillo pads, which one of the officers testified are sometimes used by crack dealers to keep crack cocaine from coming out of the end of a pipe. In the nightstand the officers found marijuana. On top of the toilet the officers found an empty plastic baggie, which contained no residue. The officers also found a pack of cigarettes, as well as a syringe inside a plastic cup. None of the evidence of drug trafficking, however, was directly tied to Henderson.

The Government concedes that it relies exclusively on the circumstantial evidence to tie Henderson to the drugs found in the motel room. It thus argues that the evidence establishes that Henderson was residing in the room, and that he therefore had constructive possession of the heroin. Constructive possession is "the knowing exercise of, or the knowing power or right to exercise dominion or control over the proscribed substance." Molinar-Apodaca, 889 F.2d at 1423. It may be proved with circumstantial evidence alone, id., and may be joint, "as when more than one person occupy [sic] a room containing an item." United States v. Garcia, 655 F.2d 59, 62 (5th Cir. 1981). We will not, however, "lightly impute dominion or control (and hence constructive possession) to one found in another person's house." United States v. Onick, 889 F.2d 1425, 1429 (5th Cir. 1989). In the case of a joint occupancy, "[m]ore evidence than mere physical proximity of the defendant to the controlled substance is required." United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992). "Presence and association" are "insufficient to sustain a conviction for possession with intent to distribute." United States v. Tolliver, 780 F.2d 1177, 1184 (5th Cir. 1986), vacated on other grounds, 479 U.S. 1074 (1987).

---

[3] The parties stipulated that the material seized was heroin and weighed 15.59 grams.

The Government did not present sufficient circumstantial evidence to enable a reasonable jury to find that Henderson was residing in the motel room beyond a reasonable doubt, such that he could be found guilty of constructive possession with intent to distribute beyond a reasonable doubt. The officers found the following non-drug-related items in the motel suite: Garcia's birth certificate; a card that was either from Garcia to Henderson, or vice versa; a photograph of Garcia taped to the mirror; a cell phone belonging to Garcia, which was never examined[4]; Garcia's diary; several driver's licenses and credit cards, none of which belonged to Henderson; items of female clothing belonging to Garcia; toiletries, some of which were identified as belonging to Garcia, and none of which were clearly identified as belonging to Henderson[5]; a set of car

---

[4] It is worth noting that the Government repeatedly argues that Henderson can be assumed to have had constructive possession of the drugs in the room because the front desk clerk on duty at the time of the arrest supposedly called him to warn him that the police were on their way. The record only discloses, however, that the clerk called someone, but not who she called. Since Henderson did not have a cell phone with him, she called either the phone the motel provided in the room (which was rented to Haverstock, not Henderson) or Garcia's cell phone. The record does not provide any evidence as to what phone was called, who answered, or to whom the call was directed.

[5] There was testimony from various witnesses that the apartment contained toiletries including body wash, deodorant, and dental care items, but this testimony did not link the items to Henderson or even identify them as male toiletries. The only testimony arguably linking toiletries to Henderson is vague, and does not support a conclusion that Henderson lived in the room. An officer present at the scene of Henderson's arrest testified as follows:

Q: And then the male clothing, tell me, how did you know that it was Mr. Henderson's? You're saying it was Mr. Henderson's. How? What's the basis of your knowledge?

A: [Garcia] stated that was her clothing and Henderson's clothing.

Q: Okay. And what was it? I mean, what did he have?

A: Jeans, shirts, shoes, body wash, personal hygiene. I believe there was tooth paste, tooth brushes and stuff like that.

Q: Was any of that seized?

A: No.

keys which the police did not link to Henderson; and items of male clothing that an officer testified Garcia identified as belonging to Henderson but which were never examined or identified. (Garcia herself was not called to testify).

Henderson himself, present in the room, had no identification on him; nor did he have money, a cell phone, or car keys on him. A police officer testified that Henderson had two room keys on his person, one to Room 529 and one to an unidentified room. Neither key was taken into custody, however, nor were they listed in the police report written at the time of the search and arrest.[6] None of the evidence controverts or conflicts with the testimony given by Hernandez, Henderson's ex-girlfriend and the mother of his child, who testified that Henderson had previously been staying with Garcia in Room 529 but had moved out because they were having relationship problems and that he was currently staying with Hernandez in another room at the motel. According to Hernandez, she and Henderson went to Room 529 that day to pick up an outfit that Garcia had bought for their son and had been there only a few moments when the police arrived. Henderson's lack of identification, money, cell phone or car keys would be reasonable if he were staying in a different motel room and had stopped by

---

The officer stated that Garcia had identified clothing as belonging to Henderson and then noted the existence of toiletries without mentioning any basis for believing that they belonged to Henderson. To the extent this statement is evidence that the toiletries belonged to Henderson instead of Garcia (or someone else) it is weak, at best. It is even weaker as evidence that Henderson regularly lived in the room, exercised dominion over drugs and other items found in the room, or intended to distribute drugs from the room.

[6] We must construe all evidence in favor of the verdict, but we have suggested, in a previous sufficiency of the evidence case, that the weight a reasonable jury gives to the testimony of law enforcement officials must be somewhat reduced when the testimony is not supported by the routine recordkeeping of said officials. See Ortega-Reyna, 148 F.3d at 546 ("Furthermore, even though the agents asserted that standard procedure would call for the taking of a full, written inventory of the borrowed vehicle at the checkpoint, the government — curiously — chose not to produce such a writing at trial, thus failing to adduce affirmative documentary evidence that the Ortegas did not have luggage and thereby settle this contested fact."). Here, the police officer in question testified that the report was drafted contemporaneously with the arrest, but nowhere in its 36 paragraphs describing the arrest and the evidence discovered and seized does it mention a key to the room.

only for a few moments, as would the presence of another unidentified room key in his pocket. The fact that Henderson had recently been involved with Garcia would also explain the presence of a few items of his clothing in her room, which was otherwise full of items belonging only to Garcia (her clothing, her makeup case, a picture of her, her correspondence with Henderson, her cell phone, her diary, and a set of car keys not belonging to Henderson).

The Government also argues that the testimony of one of the motel's front desk clerks, Alma Thomas (not the same clerk who called the room to warn them that the police were coming), demonstrates that Henderson was staying in the room. Thomas testified that motel policy required the presentation of a valid driver's license to rent a room, and that she remembered seeing an ID for Michael Haverstock, who had rented Room 529, and whom she described as being a white male in his early 30s. Thomas also testified that the motel had a record of the license plate number on Haverstock's car, and that Haverstock had paid large amounts of cash for the rooms he was renting, which she testified was a common drug dealer practice. When asked on direct examination whether she was familiar with "who was actually staying in that room," Thomas said "There was actually several people in that room. But yeah, [Henderson] was one of the guys that was in the room." When it came to explaining how she knew Henderson was staying there, however, Thomas could only say that she frequently saw him in or around Room 529, and that she had therefore spoken to him about the high level of foot traffic in and out of the room. Thomas testified, though, that in fact Henderson "always told me that he wasn't actually staying in the room; it was — he was just coming to visit or just coming by, but he never would spend the night there."[7] Far from establishing that Henderson

---

[7] At oral argument the Government stated that Thomas had testified that Henderson was "absolutely" living in the room. In fact, the exchange in question went as follows:
Q: And ever since you [started working], you saw Mr. Henderson in that room?
A: Absolutely.

was living in the room — which contained only a few items of his clothing and nothing else belonging to him — this testimony is equally if not more consistent with Hernandez's testimony that Henderson had recently been involved with Garcia but was staying with Hernandez in another room.

Under our cases this evidence is insufficient to support a verdict for constructive possession. In cases where we have found constructive possession based on circumstantial evidence, we have required more evidence than was introduced here to establish a defendant's residence at the location where the drugs were found. See, e.g., United States v. Arnold, 467 F.3d 880, 883 (5th Cir. 2006) ("The Government cites ample evidence of Arnold's individual control and dominion over the house, in particular that Arnold (1) rented the property in his own name and paid all rent from January 2003 to January 2005, (2) changed the lock after moving in to restrict access, (3) installed a video surveillance system to monitor the front door, (4) paid all utility bills, and (5) listed [the address of the house] as his place of residence on his driver's license and automobile insurance."); United States v. Starks, 145 Fed. Appx. 939, 940 (5th Cir. 2005) (unpublished) (upholding verdict against sufficiency challenge where defendant had key to locked bedroom containing not only drug paraphernalia but paperwork addressed to him and another location contained thousands of dollars in cash and an envelope establishing his residence at the location containing the locked bedroom); United States v. Traylor, 184 F.3d 816 (5th Cir. 1999) (unpublished) (upholding verdict against sufficiency challenge where defendant was found sleeping in bedroom that contained guns, ammunition, a scale, a police frequency scanner, and $1,000 in cash and where a dresser drawer in another bedroom contained cocaine, pictures of the defendant, and a letter

There is no dispute that Henderson was sometimes visiting Room 529, since he had recently been involved with Garcia, and in fact was present in the room when arrested. But Thomas' statement is that she "absolutely" saw Henderson in the room, not that she "absolutely" knew that he was living in the room.

addressed to him at the address where he was found); United States v. Allbright, 59 F.3d 1241 (5th Cir. 1995) (unpublished) (upholding verdict against sufficiency challenge where defendant admitted to occupying bedroom in which was found two briefcases containing drug paraphernalia, personal papers belonging to defendant, and receipts for material used to manufacture methamphetamine bearing defendant's signature and where co-occupant of bedroom had been in prison for the two weeks preceding the search).

In contrast, this court has found the evidence insufficient to support a verdict of possession with intent to distribute for a female defendant where the only evidence was "(1) [her] presence at the apartment when the search was executed, (2) women's clothing found in a bedroom closet, (3) the discovery of a photograph of [her with the other defendants], and (4) [her] prior dealings with a locksmith who installed a safe on the premises." Traylor, 1999 WL 499604 at *15 n.11 (summarizing Onick, 889 F.2d at 1429). In Onick, the police searched a house, in which they found drugs and drug paraphernalia, as well as guns and $80,000 hidden in clothing and a safe. The police arrested both Alvin Tolliver, the target of the investigation, and Angela Onick, who was also at the house. Both were convicted. This court, however, overturned Onick's conviction on the grounds that the prosecution had not shown actual or constructive possession. According to the court, "[Onick] did not carry drugs. The room in which she sat contained no drugs nor drug paraphernalia. No one testified that Onick possessed any drugs when the police searched the house or at any other time." Onick, 889 F.2d at 1429. This court characterized the evidence, as listed above, as "at most, [permitting] us to infer that Onick associated with Tolliver, visited Tolliver for the night, knew that the house contained a safe, and knew the safe combination." Id. This court held that given these facts, a "reasonable jury could not conclude that Onick exercised dominion and control over the premises or the drugs themselves even if it drew these inferences from the evidence." Id.

Henderson, like Onick, had only a few items of clothing in the suite where the drugs were found, which was rented by someone else, and the drugs were in a closed safe under a bathroom vanity, while he was found in the suite's living room space. Onick actually possessed a key to the safe in which the drugs were found: assuming the jury found the police testimony credible, as we must, Henderson possessed only a key to the suite, an even less direct link to the drugs than was present in Onick.[8]

The evidence in this case may have been sufficient for a reasonable jury to find a possibility of guilt, but not guilt beyond a reasonable doubt. No

---

[8] We have most frequently treated the question of constructive possession with intent to distribute in cases concerning closed or hidden compartments in automobiles, which are analogous to the safe at issue here. The case law vacating convictions for insufficiency of the evidence supporting constructive possession of drugs in automobiles further supports doing so here. See, e.g., United States v. Moreno-Hinojosa, 804 F.2d 845, 847 (5th Cir. 1986) (vacating conviction for insufficiency of the evidence where defendant and another man were driving truck that contained hidden drugs but did not have key to trailer, fingerprints did not appear on the drugs, and no drug residue was found on his clothing because the evidence "showed, at most, that [the defendant] knew [the driver], rode on a trip he may have known was improper, had $200 in cash, had two prior convictions, and misrepresented to some degree his job situation and friendship with [the driver]"); Tolliver, 780 F.2d at 1183 (vacating conviction for insufficiency of the evidence where defendants were observed briefly associating with members of a drug conspiracy and then stopped in a borrowed car which contained a small sample of heroin in a crack between the backrest and the seat cushion because neither defendant "had the heroin on their person or in any container or purse shown to have been owned by either of them, nor was either ever proved to have touched or handled it at any time" and "no evidence established how the heroin sample got in the [car] or how long it had been there" nor "directly indicated that either defendant was aware of the heroin's presence").

We have been willing, on the other hand, to uphold jury verdicts in the face of sufficiency to the evidence challenges where there was properly admitted testimony that the defendant knew the drugs were hidden in the car, see, e.g., United States v. Molina, 309 Fed. App'x 904 (5th Cir. 2009) (upholding conviction where jury heard testimony from a van's passenger that the driver knew the drugs were hidden in the car and had accompanied the passenger on previous drug smuggling trips and been paid for doing so), or where a defendant's explanations were patently implausible, see United States v. Vedia, 288 Fed. App'x 941 (5th Cir. 2008) ("the jury could have found incredible Vedia's testimony that he had owned the truck for two years but had never used [a box in the truck found to contain drugs], did not know what it was used for, and had never looked inside"). In this case, there was no testimony that Henderson knew about the drugs in the room and no physical evidence tied him to them.

testimony or physical evidence tied Henderson directly to the drugs. The evidence showed that at least six identified parties (Haverstock, Hammond, Garcia, Hernandez, Leavitt and Henderson) were somehow associated with the room, and the motel clerk testified that she saw "several people" in or around the room and that there were "a lot of people in and out of the room," including many people other than Henderson.

The Supreme Court has called it "essential . . . to the due process guaranteed by the Fourteenth Amendment" that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson, 443 U.S. at 316. The evidence here was insufficient to enable a reasonable jury to find that Henderson possessed the heroin with the intent to distribute it, at the time and in the place in question, beyond a reasonable doubt.

For the foregoing reasons, the judgment of the district court is VACATED and REMANDED.