**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 93-8857

————————

UNITED STATES OF AMERICA,
                    Plaintiff-Appellee,

versus

SANDY STEEN, JR. and BERNEL RUIZ,
                    Defendants-Appellants.

_____

Appeals from the United States District Court
        for the Western District of Texas
_____

(June 13, 1995)

Before POLITZ, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Sandy Steen, Jr., was convicted of possession with intent to distribute cocaine base.  *See* 21 U.S.C. § 841(a)(1) (1988).  Bernel Ruiz was convicted of felony possession of cocaine base.  *See* 21 U.S.C. § 844(a) (1988).  Steen and Ruiz appeal their convictions and sentences.  We affirm Steen's conviction and sentence.  Concerning Ruiz, we reverse in part, affirm in part, and remand for resentencing.

**I**

On the day of the events surrounding this case, Officer Cook of the San Antonio Police Department's Repeat Offender Program received word that Steen, whom the police wanted on two outstanding

warrants, was on his way to Ruiz' girlfriend's apartment.  Cook observed Steen and Ruiz arrive at the apartment.  Steen carried a beige bag upstairs into the apartment.

A backup SWAT team arrived shortly thereafter; one officer went to the back of the apartment building and two went to the front door.  The officers knocked on the door, observed a curtain in the window move, and announced their presence.  The officer in the rear of the building radioed that "they" were throwing what appeared to be containers of cocaine out of the apartment and into a nearby drainage ditch.

The officers attempted to enter the apartment through the front door, but they could not do so because a couch had been pushed against the door.  An officer asked one of the occupants to move the couch, and he did so.  The officers took both Steen and Ruiz into custody.  Steen had white powder on his hands that later tested positive for cocaine base.  Ruiz also had white powder on his arms, but he had cut his right wrist badly, and was transported to a hospital for treatment.  Because the white powder on Ruiz was washed away during treatment, it was not tested.

The officers found cocaine base on the apartment's carpet, patio, and microwave oven.  A broken beaker containing cocaine base lay in the sink, and there was blood on the sides of the sink.  The officers found a triple-beam scale next to the sink.  In the living room, an officer found a loaded Llama 0.9 mm semi-automatic handgun in a beige bag.

A federal grand jury indicted Steen and Ruiz, charging both with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988), and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Steen was also charged with using or carrying a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

Steen was found guilty of possession with intent to distribute cocaine base, but he was found not guilty on the conspiracy and firearm counts. Ruiz was found not guilty of both the conspiracy and possession with intent to distribute counts, but the jury found him guilty of a lesser-included offense of felony possession of cocaine base in violation of 21 U.S.C. § 844(a).

Based on his prior felony drug convictions, Steen was sentenced as a recidivist to life imprisonment. Ruiz was sentenced to five years' imprisonment and three years' supervised release. Steen and Ruiz each appeal from their conviction and sentence.

**II**

**A**

Steen argues that the district court should not have enhanced his sentence under 21 U.S.C. § 841[1] because the Government failed to comply with the notice procedures of 21 U.S.C. § 851(a).

---

[1] Section 841(b)(1)(A) provides that "[i]f any person commits a violation of this [section] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."

Section 851(a) states that:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . . Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851(a)(1) (1988). The sufficiency of a § 851(a) information is a question of law; therefore, we review the adequacy of the Government's compliance with § 851(a) de novo. *See United States v. Wylie*, 919 F.2d 969, 972 (5th Cir. 1990) (reviewing sufficiency of indictment or information de novo); *see also infra* text accompanying note 5 (noting functional similarity of § 851(a) information and indictment).

The Government acknowledges that the information it filed prior to trial misstated the number of the court in which Steen had previously been convicted and incorrectly stated that one of the convictions was for delivery rather than possession of cocaine. However, the Government argues that these inaccuracies amount to no more than clerical errors that it properly corrected by amendment prior to sentencing. Steen concedes in his reply brief that the incorrect court number was a clerical error, but he argues that the misstated identification of the offense renders the information insufficient.

If the prosecution fails to comply with § 851's procedural requirements, a district court cannot enhance a defendant's

sentence. *See United States v. Noland*, 495 F.2d 529, 533 (5th Cir.) (stating that filing requirement is "a strict condition on [§ 851's] exercise"), *cert. denied*, 419 U.S. 966, 95 S. Ct. 228, 42 L. Ed. 2d 181 (1974).[2]  We assume, without holding, that the incorrect description was not a clerical error.[3]  Therefore, if there were any material defect in the original information, the

---

[2]      *See also Suveges v. United States*, 7 F.3d 6, 10 (1st Cir. 1993) (noting that "[t]he filing of such an informational notice is jurisdictional"); *United States v. Belanger*, 970 F.2d 416, 418 (7th Cir. 1992) ("Failure to file the notice prior to trial deprives the district court of jurisdiction to impose an enhanced sentence."); *United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir. 1990) (requiring strict compliance with procedural requirements), *cert. denied*, 498 U.S. 1091, 111 S. Ct. 972, 112 L. Ed. 2d 1058 (1991); *United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir. 1990) (holding that, because statutory wording mandatory, court could not excuse failure to file information even though defendant agreed prior to trial that enhanced penalty applied); H.R. Rep. No. 1444, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 5626, 5678 [hereinafter *House Report*] (stating that purpose of section is to "prescribe[] the procedure for establishing prior convictions so as to authorize imposition of an increased penalty upon a subsequent conviction").

[3]      Section 851 does not define "clerical error."  However, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and caselaw applying those rules provide guidance on what constitutes clerical error.  *See* Fed. R. Civ. P. 60(a) ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected . . . ."); Fed. R. Crim. P. 36 ("Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected . . . ."); *see also American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145, 79 S. Ct. 170, 177, 3 L. Ed. 172 (1958) ("It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake."); *Matter of West Texas Marketing Corp.*, 12 F.3d 497, 504 (5th Cir. 1994) ("In sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or it instead a clerical error, a copying or computational mistake, which is correctable under the Rule."); *id.* ("It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a)"); *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 668-69 (5th Cir.) (en banc) (noting that scope of Rule 60(a) is "very limited" and "[c]orrection of an error of `substantive judgment,' therefore, is outside the reach of Rule 60(a)."), *cert. denied*, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986); *Jones v. Anderson-Tully Co.*, 722 F.2d 211, 212 (5th Cir. 1984) (holding that clerical errors "must be in the nature of recitation" and "not errors of substantive judgment"); *Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982) ("Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another.  Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, . . . mechanical in nature.").

Government's correction was untimely and would not cure such a defect.[4] Accordingly, we limit our evaluation of the Government's compliance with § 851(a) to the information filed prior to trial. The question, therefore, is whether the Government's identification of Steen's prior conviction, even with its inaccuracy, was nonetheless sufficient to satisfy § 851(a).

This court has never specifically addressed the sufficiency of notice in a § 851 information. However, we can look for guidance to our evaluation of the sufficiency of notice in an indictment, however, because "an enhancement information performs a function in sentencing analogous to the function an indictment or information performs in bringing the initial charges." *United States v. Garcia*, 954 F.2d 273, 276 (5th Cir. 1992). That purpose, as we have already stated, is to provide defendants with the notice necessary to allow them to challenge the contents of the indictment or information.[5] "Practical rather than technical considerations

---

[4] Lack of surprise due to an amended filing "carries no weight in the face of the plain words of [§ 851(a)]." *Noland*, 495 F.2d at 533. Therefore, a material error in a § 851(a) information that is not corrected prior to trial cannot be harmless. *Id.; see also Neary v. United States*, 998 F.2d 563, 565 (8th Cir. 1993) (holding that harmless error does not apply to § 851 requirements); *United States v. Olson*, 716 F.2d 850, 852 (11th Cir. 1983) (holding that doctrine of harmless error does not apply to failure to comply with § 851(a)). We note that these cases rejecting harmless error under § 851 all dealt with the *timing* of the notice, not its form. *See, e.g., Noland*, 495 F.2d at 532 (information filed one day after sentencing).

[5] *See United States v. Nevers*, 7 F.3d 59, 63 (5th Cir. 1993) (noting that indictment is sufficient if it "describe[s] the specific facts and circumstances surrounding the offense in question in such a manner as to inform the defendant of the particular offense charged"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1124, 127 L. Ed. 2d 432 (1994); *United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993) ("An indictment need only charge the essential elements of the offense, permitting the accused to prepare a defense . . . ."), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1232, 127 L. Ed. 2d 576 (1994); *United States v. Shelton*, 937 F.2d 140, 142 (5th Cir.) ("`An indictment is sufficient

-6-

govern resolution of [indictment] challenges and we will not reverse for minor deficiencies which do not prejudice the accused." *Chappell*, 6 F.3d at 1099.

Steen argues that § 851 establishes a notice standard higher than that which is merely constitutionally sufficient. The plain language of § 851(a) requires that an information "stat[e] in writing the previous convictions to be relied upon." Nowhere in the statute, however, did Congress prescribe the form that such a statement must take or what data would suffice. Accordingly, we look to the statute's legislative history for further guidance.

In the Comprehensive Drug Abuse Prevention and Control Act of 1970,[6] Congress substantially altered the criminal penalty provisions for drug offenses, rejecting the former, rigid mandatory sentencing scheme in favor of one with more flexibility and judicial discretion.[7] In the Act, Congress expressed its concern

---

if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet . . . ." (quoting *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986)), *cert. denied*, 502 U.S. 990, 112 S. Ct. 607, 116 L. Ed. 2d 630 (1991); *United States v. Boyett*, 923 F.2d 378, 378-78 n.1 (5th Cir.) (declining to reverse conviction where indictment cited incorrect statute, because "[t]he error was not one that could have reasonably misled the defendant to his prejudice"), *cert. denied*, 502 U.S. 809, 112 S. Ct. 53, 116 L. Ed. 2d 30 (1991); *see also* Fed. R. Crim. P. 7(c)(1) (requiring only essential facts).

[6]     Pub. L. No. 91-513, 84 Stat. 1292.

[7]     *See House Report*, *supra* note 3, at 5627 (noting that one purpose of bill was to "provid[e] for an overall balanced scheme of criminal penalties for offenses involving drugs"); *id.* at 5630 ("The bill revises the entire structure of criminal penalties involving controlled drugs by providing a consistent method of treatment for all persons accused of violations."); *id.* at 5647-48 ("The penalty structure set forth in the reported bill provides a flexible system of penalties for Federal offenses . . . ."). Section 851 as enacted contains no substantial differences from the relevant provision to which the House Report refers.

that the mandatory minimum sentence scheme had overpunished first offenders and had not achieved the desired deterrent effect.[8] Accordingly, Congress eliminated mandatory minimum sentences for all except the "professional" drug offenders. *Id.* The congressional discussions concerning the sentencing enhancement provisions of the Act are scant, but one principle does emerge: Because repeat drug offenders face significantly harsher sentences than do first offenders, Congress intended that defendants receive notice of the prior convictions on which the court is relying in time for the defendants to challenge the use of those convictions.[9] In order to facilitate this intent, Congress included in the Act a requirement that the notice be given before trial, rather than before sentencing as the previous statute had provided.[10] Other

---

[8]    *See House Report, supra* note 3:
>   The severity of existing penalties, involving in many instances minimum mandatory sentences, ha[s] led in many instances to reluctance on the part of prosecutors to prosecute some violations, where the penalties seem to be out of line with the seriousness of the offense. . . . The committee feels, therefore that making the penalty structure in the law more flexible can actually serve to have a more deterrent effect than existing penalties.

*Id.* at 5636.

[9]    *See Belanger*, 970 F.2d at 418 (stating that § 851 was enacted to satisfy due process requirement of notice and opportunity to be heard); *cf. Noland*, 495 F.2d at 533 ("Provision for enhanced sentencing is a legislative decision, and the procedure the legislature prescribes to effectuate its purpose must be followed.").

[10]    Congress' original proposal, which tracked the prior statute, provided:
>   [A]fter conviction of any offense under the act, the U.S. attorney shall advise the court whether the conviction is the offender's first or subsequent offense.  If it is not the first offense, the U.S. attorney shall file an information setting forth the offender's prior convictions which he shall affirm or deny.

S. Rep. No. 613, 91st Cong., 1st Sess. 27 (1969).  Congress chose to replace this provision with a pretrial notice requirement.

than specifying the required timing, however, Congress did not prescribe any other element of the notice. We therefore conclude that a district court may enhance a defendant's sentence, as long as the Government provides constitutionally sufficient notice of the previous convictions through an information filed prior to trial.[11]

The information filed by the Government stated the date of conviction, the venue, and the cause number of the case for each of Steen's prior convictions. The error occurred because the Government described what it believed to be the charged offense, not that to which Steen had pled guilty. This error, however, negates the notice provided by the other listed data only if the discrepancy misled Steen to his prejudice.[12]

---

[11] *See United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1485 (10th Cir.) (holding information sufficient even though it did not include date and case number of prior conviction), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1862, 128 L. Ed. 2d 484 (1994); *Belanger*, 970 F.2d at 419 (holding two-part notice to be acceptable because it contained all necessary information and both notices were filed before trial); *United States v. Wright*, 932 F.2d 868, 882 (10th Cir.) (holding that information filed after initial indictment but not refiled after superseding indictment was sufficient for § 851), *cert. denied*, 502 U.S. 962, 112 S. Ct. 428, 116 L. Ed. 2d 448 (1991).

[12] *See* Fed. R. Crim. P. 7(c)(3) ("Error in the citations or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice."); *Nevers*, 7 F.3d at 63 (noting that courts "will not reverse a conviction because of an error in the indictment unless that error misled the defendant to his or her prejudice"); *Shelton*, 937 F.2d at 143 (affirming validity of indictment where statutory basis and description provided notice and refusing to reverse for nonprejudicial errors); *United States v. Wylie*, 919 F.2d 969, 973 (5th Cir. 1990) (holding deletion of defendant's name from codefendant's indictment is harmless if defendant not misled prejudicially); *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir. 1989) ("`Surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled.'" (quoting *United States v. Trice*, 823 F.2d 80, 89 n.8 (5th Cir. 1987))), *cert. denied*, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990); *United States v. Branch*, 850 F.2d 1080, 1082 (5th Cir. 1988) (holding that miscitation of statutory basis was harmless because "[d]efendant clearly knew what illegality he was accused of having committed"),

Although Steen did not file his § 851(c) challenge to the Government's information until after the start of the trial,[13] the record indicates that Steen challenged the admissibility of the prior convictions in a pretrial motion. In that motion, Steen stated that because both prior convictions were for possession only, they were not sufficiently similar to the charged offenses to be admissible. Steen therefore admitted that he knew that the prior offenses that the Government intended to use were the two prior possession convictions described in the § 851 information. Thus, Steen himself admitted that he had notice of the prior convictions before trial, and that the incorrect description of the second conviction did not mislead him. We hold that the Government's information satisfied the sufficiency requirement under § 851(a). *See Gonzalez-Lerma*, 14 F.3d at 1486 (holding information to be sufficient because it "signalled the government's intention to rely upon a particular prior conviction," and more specifics were available prior to trial).

**B**

Steen also argues that his sentence should not stand because the district court failed to comply with the colloquy requirements

---

*cert. denied*, 496 U.S. 1018, 109 S. Ct. 816, 102 L. Ed. 2d 806 (1989).

[13] Section 851(c) prescribes the procedure by which a defendant challenges the convictions listed in the Government's § 851(a) information. 21 U.S.C. § 851(c) (1988).

-10-

of section 851(b) of Title 21, which states that:

> If the United States attorney files an information under [section 851], the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b) (1988). We have held that a district court need not use the literal terms of § 851(b) if it is clear from the circumstances that the defendant does not contest the validity of his prior convictions. *See Garcia*, 954 F.2d at 277 (holding that judge's questioning of defendant regarding prior convictions such that defendant admitted validity of those convictions satisfied § 851(b), especially when defendant never challenged the validity of those convictions); *see also Weaver*, 905 F.2d at 1482 (holding that court's failure to specifically inquire of defendant regarding convictions "understandable when considered in context" of defendant's admission of validity of prior conviction and court discussed prior convictions with defendant during review of PSI).[14] Steen admitted the previous convictions in his own testimony. Moreover, the colloquy at sentencing indicates that the district court inquired as to whether Steen challenged the convictions:

> THE GOVERNMENT: I believe that the Government has satisfied its burden, has shown

---

[14] Steen relies on outdated caselaw in arguing that substantial compliance does not satisfy § 851(b). In *Garcia*, 954 F.2d at 276-77, this court dismissed as dicta the commentary in *United States v. Garcia*, 526 F.2d 958 (5th Cir. 1976) and *United States v. Cevallos*, 538 F.2d 1122 (5th Cir. 1976), regarding the doubtful sufficiency of substantial compliance.

-11-

|  |  |
|---|---|
|  | through the enhancement that Mr. Steen is a recidivist, that he has two prior felony drug convictions, and we believe that Mr. Steen was given notice of this. |
|  | The Court under 851 should call upon Mr.Steen to either admit or deny these two offenses. I would argue to the Court that from the witness stand Mr. Steen at the course of trial admitted he had both of these felony convictions for possession of cocaine, but to keep the record clear I believe that the court should ask him to admit or deny those offenses. |
| THE COURT: | All right, Mr. Steen, do you have anything you want to say? |
| STEEN: | No, sir. |
| THE COURT: | Did I ask him a while ago? |
| STEEN'S ATTORNEY: | No, you didn't, Your Honor. |
| THE COURT: | You don't have anything you want to say? |
| STEEN: | No, sir. |

We hold that this discussion, taken in context along with Steen's admission of the prior convictions, satisfies § 851(b). *Garcia*, 954 F.2d at 277; *Weaver*, 905 F.2d at 1482. Accordingly, the district court did not err in enhancing Steen's sentence.[15]

---

[15] Steen also argues that his sentence violated the Fifth Amendment's guarantee of equal protection on the grounds that the higher sentencing ranges for cocaine base as compared to cocaine powder impact blacks more severely than whites. This argument has no merit; this Court and every other Circuit that has addressed this argument has rejected it. *See, e.g., United States v. Galloway*, 951 F.2d 64, 65-66 (5th Cir. 1992); *United States v. Watson*, 953 F.2d 895, 898 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1989, ___ L. Ed. 2d ___ (1992); *accord United States v. Clary*, 34 F.3d 709 (8th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1172, 130 L. Ed. 2d 1126 (1995); *United States v. Stevens*, 19 F.3d 93, 97 (2d Cir. 1994); *United States v. Frazier*, 981 F.2d 92, 95 (3d Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1661, 123 L. Ed. 2d 279 (1993); *United States v. D'Anjou*, 16 F.3d 604, 612 (4th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 2754, 129 L. Ed. 2d 871 (1994); *United States v. Reece*, 994 F.2d 277, 278-79 (6th Cir. 1993); *United States v. Scott*, 19 F.3d 1238, 1246 (7th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 163, 130 L. Ed. 2d 101 (1994); *United States v. Chandler*, 996 F.2d 917, 918 (7th Cir. 1993); *United States v. Lawrence*, 951 F.2d 751 (7th Cir. 1991);*United States v. Harding*, 971 F.2d 410, 413-14 (9th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1025, 122 L. Ed. 2d 170 (1993); *United States v. Turner*, 928 F.2d 956, 959-60 (10th Cir.), *cert.*

C

Steen lastly argues that the absence of African-Americans from his jury violated his constitutional right to a jury that fairly represented a cross-section of the community.[16]  The Supreme Court has held that:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579 (1979); *see also Powers v. Ohio*, 499 U.S. 400, 404, 111 S. Ct. 1364, 1367, 113 L. Ed. 2d 411 (1991) ("Although a defendant has no right to a `petit jury composed in whole or in part of persons of [the defendant's] own race,' he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305,

---

*denied*, 502 U.S. 801, 112 S. Ct. 230, 116 L. Ed. 2d 187 (1991); *United States v. Solomon*, 848 F.2d 156, 157-58 (11th Cir. 1988); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C. Cir. 1989).  Steen contends that he raises a different theory, that is, that Congress exhibited discriminatory intent in enacting the statute as a result of "unconscious racism."  We find no merit in these argument.  *See Galloway*, 951 F.2d at 66 (rejecting argument that Congress had discriminatory intent).

[16]    During voir dire, Steen's counsel objected to the initial panel of thirty persons on the grounds that no African-Americans had been included.  The jury pool of approximately fifty persons had included one African-American, but the random selection of the initial panel had not included this person.  The court responded that it could either overrule the objection or add the African-American venireperson to the initial panel.  Counsel for the Government objected, stating that adding anyone arbitrarily to the panel would violate the statutory requirement that the panel be selected at random.

10 Otto 303, 305, 25 L. Ed. 664 (1880)).

Steen contends that his jury pool did not reasonably reflect the racial composition of the community. "[I]n holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition . . . ." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702, 42 L. Ed. 2d 690 (1975). In the relevant community, African-Americans account for 3.95% of the eligible population. This corresponds to 1.89 persons in a jury pool of the same size as formed in this case, and there was actually one African-American in the jury pool.

We need not decide whether the jury pool in this case reasonably mirrors the racial composition of the community, because Steen fails to satisfy the third *Duren* element. Steen does not provide any evidence of systematic exclusion of African-Americans from the jury selection process. *See United States v. Lopez*, 588 F.2d 450, 451-51 (5th Cir.) (requiring showing that "the exclusion of a particular minority group from jury service is due to some form of intentional discrimination"), *cert. denied*, 442 U.S. 947, 99 S. Ct. 2895, 61 L. Ed. 2d 319 (1979). Indeed, we find no basis in the record to support even Steen's assertion that the prosecutor excluded African-Americans from *this* jury on account of their

-14-

race.[17]

## III

## A

Ruiz first contends that he was not properly convicted of felony possession of cocaine base.  Although the jury found him not guilty of possession with intent to distribute cocaine base, they found him guilty of felony possession as a lesser-included offense.  Ruiz contends that his conviction under the third sentence of section 844(a) was legally insufficient as a lesser-included offense of section 841(a)(1), under which he was charged.

"The district court may give a lesser included offense instruction if, but only if, (1) the elements of the offense are a subset of the elements of the charged offense, and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense yet acquit him of the greater." *United States v. Deisch*, 20 F.3d 139, 142 (5th Cir. 1994).  Accordingly, the district court in this case properly gave the § 844(a) lesser-included-offense instruction "*only* if all of the elements of simple possession pursuant to section 844 were also elements of possession with intent to distribute pursuant to section 841(a)(1)." *Id.* at

---

[17]    The record reflects that the prosecutor objected to the addition of the African-American venireperson to the jury panel because such an arbitrary procedure would violate statutory random-selection requirements.  *See* 28 U.S.C. § 1861 (1988) ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."); *United States v. Kennedy*, 548 F.2d 608, 610-11 (5th Cir.) (holding that use of volunteers or other arbitrary selection methods violated statutory requirement of random jury pool selection), *cert. denied*, 434 U.S. 865, 98 S. Ct. 199, 94 L. Ed. 2d (1977).

143. In *Deisch*, this Court held that felony possession under § 844(a)[18] requires that the substance at issue be cocaine base and consequently includes an element not included in § 841(a)(1).[19] Accordingly, felony possession under § 844(a) cannot be a lesser-included offense of § 841(a)(1), "even if, as here, the indictment alleges that the controlled substance is cocaine base," *id.* at 152, and, as the Government acknowledges, Ruiz' felony conviction cannot stand. However, "simple possession of cocaine, contrary to the first sentence of section 844(a),[20] may be a lesser included offense under a charge of possessing cocaine with intent to distribute it contrary to section 841(a)(1)," *id.* As in *Deisch*, our reversal of Ruiz' felony conviction "does not require that we set aside the jury's verdict which necessarily found [the defendant] guilty of a violation of the first sentence of section 844(a)." *Id.* Accordingly, as in *Deisch*, we remand for resentencing for misdemeanor possession of a controlled substance.[21]

---

[18] The third sentence of § 844(a) states the felony possession offense: "[A] person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years . . . ."

[19] Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally . . . to possess with intent to . . . distribute . . . a controlled substance."

[20] The first sentence of § 844(a) provides that "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . ."

[21] Our remand to resentence Ruiz for misdemeanor possession renders moot his arguments that (1) the quantity of cocaine is an element of the felony possession offense, (2) the general verdict on felony possession was insufficient, and (3) the district court improperly sentenced Ruiz for a § 844(a) felony possession violation.

**B**

Ruiz also argues that the evidence was not sufficient to convict him of misdemeanor possession of a controlled substance. We will affirm such a conviction if any reasonable jury could have found each essential element of the offense beyond a reasonable doubt. *United States v. Flores-Chapa*, 48 F.3d 156, 161 (5th Cir. 1995). In making this determination, we "view[] the evidence and the inferences that may be drawn from it in the light most favorable to the verdict." *United States v. Harris*, 25 F.3d 1275, 1279 (5th Cir.) (quoting *United States v. Sparks*, 2 F.3d 574, 579 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 899, 127 L. Ed. 2d 91 (1994))), *cert. denied*, ___ U.S. ___, 115 S. Ct. 458, 130 L. Ed. 2d 366 (1994). Moreover, we accept all credibility choices that support the jury's verdict, *Harris*, 25 F.3d at 1279, letting jurors "use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence," *Flores-Chapa*, 48 F.3d at 161. The elements of the misdemeanor possession offense under § 844 are 1) knowing, 2) possession, 3) of a controlled substance. *Deisch*, 20 F.3d at 144-45. Ruiz challenges the possession and knowledge elements, conceding that cocaine base is a controlled substance.

Ruiz contends that the evidence was not sufficient to prove beyond a reasonable doubt that he possessed the cocaine base. Constructive as well as actual possession will suffice. *United*

*States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989); *United States v. Ferg*, 504 F.2d 914, 916 (5th Cir. 1974). "Constructive possession is defined as ownership, dominion, or control over illegal drugs *or* dominion over the premises where drugs are found." *Onick*, 889 F.2d at 1429.[22] Either direct or circumstantial evidence can support a finding of possession. *Onick*, 889 F.2d at 1429; *Ferg*, 504 F.2d at 916.

Ruiz argues that he was merely present at the apartment and thus did not possess the cocaine base. While presence alone cannot sustain a conviction,[23] Ruiz was more than merely present. During the events at issue, Ruiz had control over the apartment. In

---

[22] *See also Flores-Chapa*, 48 F.3d at 162 ("Proof of constructive possession is sufficient; thus, any showing that the defendant exercised ownership, dominion, or control of the drugs, or of the premises on which they are found, will suffice."); *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1423 (5th Cir. 1989) (defining "constructive possession as `the knowing exercise of, or the knowing power or right to exercise dominion and control over the prescribed substance'" (citations omitted)); *Ferg*, 504 F.2d at 916-17 ("In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed."); *United States v. Martin*, 483 F.2d 974, 974-75 (5th Cir. 1973) ("To establish constructive possession, however, there must be proof of dominion and control.").

[23] *United States v. Cordova-Larios*, 907 F.2d 40, 42 (5th Cir. 1990) ("Mere presence in the area where drugs are found is insufficient to support a finding of possession."); *United States v. Sandoval*, 847 F.2d 179, 185 (5th Cir. 1988) ("[W]e have not hesitated to reverse a conviction when the evidence has shown only that the defendant ran with bad company . . . ."); *United States v. Cardenas*, 748 F.2d 1015, 1019-20 (5th Cir. 1984) ("To find constructive possession, however, more evidence than mere physical proximity of the defendant to the controlled substance is required."); *United States v. Gordon*, 700 F.2d 215, 216-17 (5th Cir. 1983) (reversing conviction where defendant only present at scene and no additional connecting evidence); *United States v. Sneed*, 705 F.2d 745, 749-50 (5th Cir. 1983) (finding evidence insufficient where defendant's father owned premises and defendant only present day before drug smuggling occurred), *abrogated on other grounds by Richardson v. United States*, 468 U.S. 317, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); *Ferg*, 504 F.2d at 917 (observing that "`mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession.'" (quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973))).

-18-

addition, an officer testified that Ruiz had white powder on his arms.[24] The emergency room physician also testified that he observed a white, powdery substance on Ruiz' arms. Although the substance observed on Ruiz was not tested, the white powder found on Steen's hands tested positive for cocaine. Also, Ruiz's blood was found on the sink in which the officers found a flask containing cocaine. This evidence was more than sufficient for a reasonable jury to find that Ruiz possessed a controlled substance.

Ruiz also contends that the evidence was not sufficient to prove beyond a reasonable doubt that he *knowingly* possessed controlled substance. "Because knowledge and intent are subjective elements, direct proof is not required. The elements may be inferred from the circumstances of the case." *United States v. Ledezma-Hernandez*, 729 F.2d 310, 314 (5th Cir. 1984). We can infer knowledge from suspicious circumstances that demonstrate the defendant's consciousness of guilt. *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1236 (5th Cir. 1990) (noting that while control of storage place alone does not show knowledge, "the court will sustain a jury's determination if other circumstances demonstrate consciousness of guilt"). These circumstances include nervousness and inconsistent, implausible, or fabricated explanations for the defendant's possession of the drugs. *United States v. Carillo-Morales*, 27 F.3d 1054, 1064-65 (5th Cir. 1994)

---

[24] Ruiz argues that the testimony of the one officer who stated that he had not seen any white powder on Ruiz' arms negates a finding of possession. However, we view the evidence in the verdict's favor, not Ruiz'.

(noting that knowledge can be inferred from control if other suspicious circumstances exist and that "additional factors such as nervousness or inconsistent stories given by the defendant [can] provide that circumstantial evidence"), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1163, 130 L. Ed. 2d 1119 (1995); *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988) (holding that inconsistent or fabricated statements indicated guilty knowledge).

Ruiz told the officers first that he cut his arm on some dishes in the sink and later that he cut his arm with a knife, but the evidence reflects that there were neither dishes nor a knife in the sink. He told the emergency room physician that the white powder was flour. Also, one of the officers testified that Ruiz looked nervous when he came out on the porch. Moreover, cocaine base was in plain view in the dining room and kitchen of the apartment. This evidence is sufficient to sustain a finding of knowledge. *See Carillo-Morales*, 27 F.3d at 1065 (holding evidence sufficient where defendant was nervous, and drugs were in plain view); *Anchondo-Sandoval*, 910 F.2d at 1237 (holding that constructive possession plus inconsistent statements sufficed to show knowing possession).[25]

---

[25] We also find the totality of the evidence more than sufficient to support Ruiz' conviction. *See Cardenas*, 748 F.2d at 1020 (basing sufficiency determination not "on any one single factor, but after a careful consideration of all the evidence together. . . . [I]n law, unlike plane geometry, the whole may be greater than the mere sum of the parts."); *see also United States v. Stanley*, 24 F.3d 1314, 1320-21 (5th Cir. 1994) (noting that court has "affirmed convictions when the defendant's [constructive possession] is combined with evidence that the defendant was nervous, made conflicting statements to authorities, or related implausible stories to authorities"); *Ledezma-Hernandez*, 729 F.2d at 314 (same).

-20-

Ruiz lastly argues that the district court erred in admitting Steen's out-of-court statement that he was going to the apartment to teach his "cousin" to cook crack cocaine. He contends that the statement was hearsay and was not admissible against him.[26] "[A] prior statement of a witness who is available to testify at trial is admissible only if it is inconsistent with his trial testimony." *United States v. Greer*, 939 F.2d 1076, 1097 (5th Cir. 1991), *modified on other grounds*, 968 F.2d 433 (5th Cir. 1992) (en banc), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1390, 122 L. Ed. 2d 764 (1993). The statement was admitted to impeach Steen, because he had denied making any statement about crack cocaine to the officer at the scene. Ruiz argues, however, that the district court erred in failing to give a limiting instruction informing the jury that they could only consider the statement as evidence against Steen.

Parties must object to errors in the district court in a timely manner; or otherwise they risk forfeiture of the right impinged upon by the error. *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc) ("[T]he failure of a litigant to assert a right in the trial court likely will result in its forfeiture."), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1266, 131 L. Ed. 2d 145 (1995). Ruiz failed to object at trial to the lack of

---

[26] We note that, because Ruiz had the opportunity to cross-examine Steen, *Bruton v. United States* does not require exclusion. *See Bruton*, 391 U.S. 123, 127-28, 88 S. Ct. 1620, 1623, 20 L. Ed. 2d 476 (1968) (holding that admission of codefendant's statements violated Confrontation Clause if defendant had no opportunity to cross-examine because codefendant did not testify).

a limiting instruction. "In exceptional circumstances, appellate courts may, in the interests of justice, notice errors to which no objection has been made. Such circumstances are sharply circumscribed by the plain error standard . . . ." *Id.* Accordingly, we review the district court's decision to admit Steen's statement without a limiting instruction for plain error. *See* Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").[27]

In determining whether the district court committed plain error, we conduct a two-part analysis. *United States v. Olano*, ___ U.S. ___, ___, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993). First, we determine if there was error at all,[28] and if so, whether the error was plain[29] and affected the defendant's substantial

---

[27]    *See also United States v. Branch*, 989 F.2d 752, 756 (5th Cir.) (reviewing absence of jury instruction for plain error), *cert. denied*, ___ U.S. ___, 113 S. Ct. 3060, 125 L. Ed. 2d 742 (1993); *United States v. Stafford*, 983 F.2d 25, 26 (5th Cir. 1993) ("When an omission from a jury charge is raised for the first time on appeal, we review only for plain error."); *United States v. Waldrip*, 981 F.2d 799, 805 (5th Cir. 1993) (noting that if defendant does not request a limiting instruction, appellate court determines "whether the district court committed plain error in failing *sua sponte* to give the instruction").

[28]    *Olano*, ___ U.S. at ___, 113 S. Ct. at 1777 ("The first limitation on appellate authority under Rule 52(b) is that there indeed be an `error.'"); *see also Calverley*, 37 F.3d at 162 (stating that first element of analysis requires that there be error); *United States v. Rodriguez*, 15 F.3d 408, 415 (5th Cir. 1994) (same).

[29]    *Olano*, ___ U.S. at ___, 113 S. Ct. at 1777 (requiring plain error and stating that "`[p]lain' is synonymous with `clear' or, equivalently, `obvious.'"); *Calverley*, 37 F.3d at 162-63 (stating that plain , `[a]t a minimum,' contemplates an error which was `clear under current law' at the time of trial." (quoting *Olano*, ___ U.S. at ___, 113 S. Ct. at 1777)).

rights.[30] If a party can satisfy these requirements, the appellate court has discretion to correct the error, but "only if the [error] `seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" *Calverley*, 37 F.3d at 164 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)); *accord Rodriguez*, 15 F.3d at 416.

We need not decide whether to exercise our discretion in this case, because even if the failure to give a limiting instruction was error, Ruiz cannot prove that the error prejudiced his substantial rights. As we have already explained, *see supra* part II.B.2, the other evidence against Ruiz was more than sufficient to convict him. Steen's statement thus constituted cumulative evidence, not necessary to the sufficiency of the jury's verdict. *See Waldrip*, 981 F.2d at 805 (holding that admission of evidence was not plain error because it was not "extremely damaging" in light of other evidence against defendant). Consequently, the district court's admission of Steen's statement without a limiting instruction was not plain error.

**IV**

For the foregoing reasons, we AFFIRM Steen's conviction and sentence. We also REVERSE Ruiz' felony conviction, AFFIRM the

---

[30] *Olano*, ___ U.S. at ___, 113 S. Ct. at 1777-78 ("The third and final limitation on appellate authority under Rule 52(b) is that the plain error `affec[t] substantial rights.'" (quoting F.R. Crim. P. 52(b))); *Calverley*, 37 F.3d at 164 ("*Olano* counsels that in most cases the affecting of substantial rights requires that the error be prejudicial; it must affect the outcome of the proceeding."); *Rodriguez*, 15 F.3d at 415 (requiring a "specific showing of prejudice").

jury's verdict as a misdemeanor conviction, and REMAND for resentencing for misdemeanor possession of a controlled substance.