

## NUMBER 13-08-00463-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ERIC SIMON PELACHE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 103th District Court of Cameron County, Texas.**

## OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Opinion by Chief Justice Valdez**

Appellant, Eric Simon Pelache, was indicted for the offense of robbery with one enhancement paragraph, a second-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2008), 29.02 (Vernon 2003). Pelache elected to have a bifurcated trial. A jury acquitted Pelache of the robbery charge, but found him guilty of the lesser-included offense of theft of a person, a state-jail felony. *See id.* § 31.03(a), (e)(4)(B) (Vernon Supp.

2008).  A sentencing hearing was set for three weeks later.  Six days after the jury rendered its guilty verdict, the State notified Pelache of its intent to enhance punishment on the grounds that he had two other prior felony convictions.  Sixteen days after the State's notice, at the sentencing hearing before the trial court, Pelache objected to the new enhancement allegations and requested a sentence within the state-jail felony punishment range.  The trial court denied Pelache's request, found the new enhancement allegations true, and sentenced him to twenty years' confinement, the maximum sentence for a second-degree felony.  *See id*. §§ 12.33, 12.42(a)(2) (Vernon 2003).  In seven issues, Pelache argues that: (1) the evidence is legally and factually insufficient to establish either of the prior convictions; (2) the trial court erred in calculating the enhanced punishment range; and (3) the enhanced punishment violates his right to due process.  *See* U.S. CONST. amend. XIV.  We reverse the sentence and remand with instructions.

## I. BACKGROUND

On February 20, 2008, a grand jury indicted Pelache for robbery; the indictment included a single enhancement paragraph that alleged a September 7, 2000 conviction for aggravated robbery.  Shortly before jury selection began,  Pelache's counsel admonished him as to the possible sentences that the trial court could impose.  Counsel specifically provided that:

[Counsel]:    [Y]ou and I have reviewed the indictment that's been filed against you for second-degree robbery, which also includes an enhancement paragraph, alleging a prior?

Pelache:    Yes, sir.

[Counsel]:    And, of course, I have discussed with you that the offense of robbery is a second-degree offense which carries a punishment of two-to-twenty years, and that in the event that

2

you are found guilty of that robbery charge, and should the state be able to prove that you have a prior final conviction that resulted in you going to prison, that that second-degree felony would then be enhanced to a first-degree felony?

Pelache:     Yes, sir.

[Counsel]:   And, of course, the range of punishment for a first-degree felony being not less than five years to ninety-nine, or life?

Pelache:     Yes, sir.

[Counsel]:   And also, the fact that you have a prior conviction for a felony, of course, that disqualifies you from requesting probation from a jury?

Pelache:     Yes, sir.

[Counsel]:   And essentially, the jury—if this matter was left to the jury to decide, and if you, in fact, are found guilty of the robbery and the state was able to prove that you had a prior felony conviction, that the jury would then have the range of punishment to consider of five to ninety-nine, or life. Is that correct?

Pelache:     Yes, sir.

[Counsel]:   Now, having discussed that possibility, is it—isn't it true that you and I discussed that you also have a right to go in front of the Court, in front of the Judge?

Pelache:     Yes, sir.

[Counsel]:   And I've advised you that in the event that you're found guilty, that this Court will consider a range of punishment between 20 to 30 years. Do you understand?

Pelache:     Yes, sir.

Pelache also testified that the State had offered him a plea bargain. If he pleaded guilty to a charge of theft of person, the State would recommend a sentence of two-years' confinement in a state jail. But, after considering the facts, charges, and possible

3

punishment, Pelache declined the plea bargain. Pelache then agreed to have the trial court assess punishment, and a jury was selected. On April 15 and 16, 2008, the jury heard testimony from, *inter alia*, Julia Cano, a convenience store clerk who testified that Pelache robbed her, several law enforcement officers who testified as to their investigation, and Pelache who testified in his own defense.

On April 17, 2008, the jury found Pelache not guilty of the robbery charge, but guilty of the lesser-included offense of theft of a person. On April 23, 2008, six days after the jury rendered its verdict, the State filed a motion to enhance punishment requesting "leave of Court to amend the indictment" to include two other charges that Pelache was convicted of on September 7, 2000, one for aggravated robbery and another for possession of a controlled substance. *But see* TEX. CODE CRIM. PROC ANN. art. 21.01 (Vernon 1989) ("An 'indictment' is the written statement *of a grand jury* accusing a person therein named of some act or omission which, by law, is declared to be an offense." (emphasis added)). The State's motion notified Pelache for the first time of its intention to use all three prior convictions for enhancement purposes.[1]

On May 9, 2008, the trial court held a punishment hearing, at which Pelache's counsel objected on the grounds that the State had not properly notified his client of the enhancement of Pelache's state-jail felony to a second-degree felony.[2] The trial court

---

[1] On April 7, 2008, the State responded to Pelache's request to disclose intent to use evidence of extraneous offenses by notifying him that it intended to introduce his three September 7, 2001 convictions. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 37.07, §3 (Vernon Supp. 2008). This notice, however, cannot be construed as a notice of enhancement. *See Fairrow v. State*, 112 S.W.3d 288, 290-94 (Tex. App.–Dallas 2003, no pet.).

[2] The dissent contends that Pelache failed to preserve his due process issues because he "did not object that either the notice to him that the State was seeking to enhance his sentence, or the process of enhancing his sentence violated his right to due process under either state or federal constitutional grounds."

denied Pelache's request to sentence him within a state-jail felony punishment range, admitted copies of three prior judgments of conviction,[3] and sentenced Pelache to twenty years' confinement. This appeal ensued.

## II. DISCUSSION

In his fifth and sixth issues, Pelache argues that the trial court's enhancement of his punishment from a state-jail felony to a second-degree felony violated his right to due process because the State's motion to enhance punishment was untimely.[4] *See* U.S. CONST. amend. XIV. The State contends that Pelache received constitutionally adequate notice under *Villescas v. State*, 189 S.W.3d 290 (Tex. Crim. App. 2006). We do not

---

This contention is unfounded. At the May 8, 2009 punishment hearing, Pelache's counsel stated:

> Now, my argument is that no notice was provided with regards to enhancing Mr. Pelache's state-jail felony from a non-aggravated felony to an aggravated state-jail felony. . . . It's my position that he is not subject to having his state-jail felony enhanced from a non-aggravated to an aggravated because the notice that has been provided by the state had been in the form of an enhancement, and that notice was done pursuant to 12.42, which is not applicable. And it's our position that the only offense and range of punishment that you can consider in this case is basically a state-jail felony, between six to two months—between six months and two years. In the alternative, if the Court should not agree with us, not that I'm agreeing, but that one that would fit more than what the state is arguing, that it's a second, would be a third-degree, not a second-degree felony. We would object to that.

We conclude that Pelache's "specific grounds were apparent from the context." *See* TEX. R. APP. P. 33.1. We additionally conclude, contrary to the dissent's finding, that Pelache adequately briefed his due process issues.

[3] The following convictions, dated September 7, 2000, were rendered by the 103rd Judicial District Court of Cameron County following Pelache's guilty pleas: (1) trial court cause number 00-CR-523-D, first-degree felony conviction for aggravated robbery; (2) trial court cause number 00-CR-522-D, first-degree felony conviction for aggravated robbery; and (3) trial court cause number 95-CR-1523-D, state-jail felony conviction for possession of a controlled substance. None of the convictions included a deadly weapon finding.

[4] Pelache's other issues are ancillary to his constitutional issues because they deal with the sufficiency of the evidence supporting the enhancement allegations and the trial court's calculation of the enhanced sentence. Therefore, we address Pelache's fifth and sixth issues out of order because they present a threshold question. *See In the Interest of B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (noting the prudential principle that we decide constitutional questions only when we cannot resolve issues on nonconstitutional grounds); *see also., Turner v. State*, 754 S.W.2d 668, 675 (Tex. Crim. App. 1988) (providing that the constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised).

believe *Villescas* is controlling because the language relied upon in that case is *dicta*, at best.

In *Villescas*, the defendant was served six days before trial with the State's notice of enhancement. *Villescas*, 189 S.W.3d at 291. The defendant objected before trial and again after the jury rendered its guilty verdict. *Id*. At the punishment hearing, the defendant did not request more time to prepare. *Id.* On appeal, the Eighth Court of Appeals held that the notice of enhancement requirement was of statutory origin, found the trial court erred in overruling the defendant's objection, and reversed the sentence after conducting a harm analysis. *Id*. at 292. The court of criminal appeals held that the notice of enhancement only had to satisfy constitutional safeguards, and it reversed and reinstated the trial court's sentence. *Id*. at 295. The court of criminal appeals, relying on United States Supreme Court precedent, noted that "due process does not even require that the notice be given before the guilt phase begins, much less that it be given a number of days before trial." *Id*. at 294 (citing *Oyler v. Boles*, 368 U.S. 448, 452 (1962)). The phrase is *dicta* because it was a statement by the court that did "not embody the resolution or determination of the specific case before the court." *See* Black's Law Dictionary 545 (6th ed. 1990).

Moreover, the *Villescas* court's reliance on *Oyler* is untoward because *Oyler* was presented to the United States Supreme Court on a habeas corpus proceeding, and therefore, contrary to the court of criminal appeals' belief, did not definitively set the constitutional floor regarding enhancement notices. *See Pena v. State*, 191 S.W.3d 133, 142 (Tex. Crim. App. 2006) (Meyers, J., dissenting); *Fugate v. State*, 200 S.W.3d 781, 787

6

(Tex. App.–Fort Worth 2006, no pet.) (Dauphinot, J., concurring) ("When the majority opinion in *Villescas* provides that whether the notice is constitutionally adequate is the ultimate issue, what it really means is that the ultimate issue is whether the late notice harmed the defendant.").

A review of *Oyler*'s factual and procedural background reveals the dissimilarities between it, *Villescas*, and the instant case. William Oyler was convicted of second-degree murder, which carried a punishment range of five to eighteen years, on February 5, 1953. *Oyler*, 368 U.S. at 449. Sentencing was deferred, but before the punishment hearing, the State filed an information alleging that Oyler had three prior convictions in another state, and under the habitual offender statute, he was subject to a mandatory life sentence. *Id*. at 450. Oyler, accompanied by counsel, did not object and acknowledged the prior convictions in open court. *Id*. The trial court then sentenced Oyler to life. *Id*. In 1960, Oyler filed a habeas corpus application with the West Virginia Supreme Court of Appeals alleging a denial of due process under the Fourteenth Amendment in that he had not been given advance notice of his prosecution as a recidivist. *Id.* He claimed that such advance notice would have allowed him to show the inapplicability of the habitual offender statute. *Id.* The state supreme court rejected Oyler's argument, as did the United States Supreme Court, which noted that he was represented by counsel and did not object to the applicability of the habitual offender statute at trial. *Id*. at 454. The United States Supreme Court held that Oyler had essentially waived his due process argument because he did not object before the trial court. *Id*. *Oyler*'s limited holding on waiver cannot be extended to the instant case, where an objection was raised.

The State, relying on *Villescas* and this Court's opinion in *Ketchum v. State*, 199 S.W.3d 581, 593 (Tex. App.–Corpus Christi 2004, pet. ref'd), posits that Pelache "waived" review of his enhancement issues because he did not craft a record of defenses as to the enhancement allegations, and thus, he cannot show harm. But *Villescas* and *Ketchum* are easily distinguishable because in those cases, the criminal defendant was notified before trial of the State's intent to enhance his conviction. In this case, the State notified Pelache of two additional punishment enhancements[5] only after the jury rendered an acquittal on the robbery charge. Thus, the State is seeking a punishment range that the jury could not have anticipated in the trial on the primary offense.

The basic due process violation in this case is of Pelache's right to know the nature of the charges he is accused of and the consequences of a conviction before jeopardy attaches. This is a basic right that is well recognized in the federal criminal system. *See, e.g., United States v. Steen*, 55 F.3d 1022, 1027 (5th Cir. 1995) ("[A] district court may enhance a defendant's sentence, as long as the government provides constitutionally sufficient notice of the previous convictions through an information filed *prior to trial*.") (emphasis added). As Justice Douglas wrote for the four-justice minority opinion in *Oyler*:

> Adequate notice of the charge under these habitual-offender statutes is as important as adequate notice of the charge in an ordinary criminal trial. The notice required must be commensurate with the range and complexity of issues that concededly may be tendered. The requirements of notice, like those for a fair hearing, are basic.

*Oyler*, 368 U.S. at 462-63 (Douglas, J., dissenting).

---

[5] We note that the convictions referenced in the two other punishment enhancements were issued by the same court on the same date as the conviction referenced in the enhancement paragraph that was originally included in the indictment. Additionally, the record clearly reflects that the State was aware of these two additional convictions on April 7, 2008, when it responded to Pelache's request for information.

We cannot say beyond a reasonable doubt that the State's failure to timely notify Pelache of its intent to enhance punishment was a harmless error. *See* TEX. R. APP. P. 44.2(a). By enduring the current sentence, Pelache is harmed because his decisions to proceed to trial and have the trial court assess punishment were based in part on the potential consequences. After receiving admonishments from his attorney, Pelache testified that he declined the State's plea bargain after considering the facts, charges, and possible punishment. Pelache also elected to have the trial court, instead of a jury, assess punishment. Because Pelache entered a trial in which he was eventually sentenced to twenty years' confinement, instead of the punishment range for a state-jail felony (the crime he was actually convicted of), his substantial rights were harmed. *See* TEX. PENAL CODE ANN. § 12.35 (Vernon Supp. 2008).

Pelache's fifth and sixth issues are sustained.

### III. CONCLUSION

We reverse the trial court's sentence and remand for a new punishment hearing. The trial court is instructed to assess a punishment without regard to the two improperly noticed enhancement allegations.

_____
ROGELIO VALDEZ,
Chief Justice

Publish. TEX. R. APP. P. 47.2(b)

Dissenting Opinion by
Justice Rose Vela.

Opinion delivered and filed
this the 26th day of June, 2009.

9