# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 12-51192

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL ERIC WALLACE; DEREK LEE BLOCKER,

Defendants-Appellants.

———————

Appeals from the United States District Court
for the Western District of Texas

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2014

Lyle W. Cayce
Clerk

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

CARL E. STEWART, Chief Judge:

A jury found Michael Eric Wallace ("Wallace") and Derek Lee Blocker ("Blocker") (collectively "Appellants") guilty on all counts of an indictment charging them with conspiracy to possess with intent to distribute 500 or more grams of methamphetamine ("meth") pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Appellants were also convicted, on separate counts, of distributing smaller quantities of meth in violation of § 841(a)(1). The district court sentenced Appellants to 240 months' imprisonment—the mandatory minimum sentence resulting from Appellants having been previously convicted of a drug-related felony. Appellants filed timely appeals challenging

No. 12-51192

the jury's verdict and the district court's rulings.  For the reasons explained herein, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At trial, the government argued that Appellants' drug activities in Midland, Texas and the Arlington/Dallas-Fort Worth, Texas area were part of one scheme that involved various individuals who conspired to distribute 500 or more grams of meth between July 2010 and July 2012.  For purposes of this opinion, we refer to Appellants' narcotics activities in Arlington/Dallas-Fort Worth, Texas as the "DFW Transactions." We refer to their narcotics activities in Midland, Texas as the "Midland Transactions."

### *The DFW Transactions*

The evidence showed that in early 2010, Wallace met a meth user named Dustin Harris ("Harris") in Arlington, Texas.  Harris was in search of "better meth" and Wallace told Harris that he could help him acquire it.  Harris testified at trial and explained that in July 2010, Wallace connected him with Amy Middleton ("Middleton") for the purpose of purchasing higher quality meth.  During the first meeting between Wallace, Harris, and Middleton, Harris gave Wallace money; Wallace and Middleton left Harris's presence; then they returned and provided Harris with one ounce of meth.  Harris testified that he met Wallace in DFW a second time and again provided Wallace with money to purchase meth on his behalf.  This transaction took place at Middleton's house and Middleton's supplier, Keith Bradford ("Bradford") was present.  That day, Harris provided Wallace with money and Wallace went upstairs with Middleton and Bradford.  When Wallace returned, he provided Harris with four ounces of meth.

Harris and Wallace returned to DFW approximately twice a week to make similar purchases from August or September 2010 through mid-November 2010.  Harris testified that he usually purchased two or more ounces

2

No. 12-51192

of meth during his and Wallace's recurring trips to DFW.  Eventually, Harris established rapport with Middleton and Bradford such that he was able to purchase meth from them without Wallace's presence or assistance.  However, Wallace would "chip in money from time to time, up to $500.00 to help buy what [they] needed."  Harris testified that he was arrested in November 2010 and pleaded guilty to a drug conspiracy.  As part of his guilty plea, Harris admitted to conspiring to distribute approximately 2.4 kilograms of meth between July 2010 and November 2010.

The government also called Middleton as a witness at trial.  Middleton testified that she connected Wallace with Bradford to facilitate meth deals.  In return for a successful transaction, Middleton often received money or drugs from Bradford.  Bradford also testified during the government's case-in-chief.  Bradford stated that when he sold meth to Harris and/or Wallace, they always purchased at least an ounce.  Bradford also pleaded guilty to conspiring to distribute 2.4 kilograms of meth.  Wallace's former girlfriend, Christina Masdon, testified at Appellants' trial as well.  She explained, *inter alia*, that she traveled to DFW with Wallace in March 2011 and during that trip, Wallace purchased "pink meth."[1]

Midland Police Department narcotics detective Robby Mobley ("Detective Mobley") also testified during the government's case-in-chief.  Detective Mobley explained that during his investigation, he recovered data from the GPS in Wallace's vehicle and it showed that Wallace frequently visited the DFW area.  During an interview with Detective Mobley, Wallace admitted to traveling to DFW to purchase meth but claimed that it "was just

---

[1] As explained more fully below, this fact is important because Blocker sold pink meth to a law enforcement cooperator in Midland during a controlled purchase shortly after Wallace's trip to DFW in March 2011.  Pink meth was also in Blocker's possession at the time of his arrest in March 2011.

for personal use." Wallace also indicated that Blocker "made one trip with him" when he traveled to DFW to purchase meth. When asked whom he purchased meth from in DFW, Wallace listed, *inter alia,* Middleton and Bradford.

### *The Midland Transactions*

In August 2010, Detective Mobley was investigating a suspected drug dealer named Shawn Cook ("Cook") and learned that Wallace may have been associated with Cook in the Midland, Texas drug trade. In early 2011, Detective Mobley received information regarding drug activity in an apartment in Midland and Wallace's name resurfaced. The individuals who occupied the apartment were Brad Beshears ("Beshears") and Tracy Scott ("Scott") (collectively "cooperators"). At trial, Detective Mobley described Beshears and Scott as "lower level individuals" in the suspected drug operation and explained how he secured their cooperation in his investigation into their suppliers. At Detective Mobley's direction, the cooperators participated in controlled purchases that involved purchasing meth while under law enforcement surveillance. Law enforcement officers recorded phone calls between the cooperators and Appellants during which the cooperators requested narcotics for purchase. The first call relevant to this case was placed on February 4, 2011 and led to a transaction on February 5, 2011 where Beshears met with Wallace and purchased 3.6 grams of meth.

The next controlled purchase took place on February 27, 2011. Detective Mobley facilitated the February 27, 2011 transaction by repeating the same process he used to facilitate the February 5, 2011 transaction. He instructed Scott to call the same phone number Beshears called on February 4, but this time Blocker answered the phone instead of Wallace. Shortly thereafter, Scott met with Blocker and purchased 3.6 grams of meth. Detective Mobley executed two more controlled purchases between the cooperators and Blocker that

occurred on February 28, 2011 and March 8, 2011.  The February 28, 2011 purchase involved 2.6 grams of meth and the March 8, 2011 purchase involved 7 grams of meth.  The meth acquired during the March 8, 2011 controlled purchase was pink.

In order to support its theory that Wallace and Blocker worked together to distribute meth, the government established that the cooperators regularly purchased meth from Appellants for several months.  The cooperators explained that when they called Wallace to purchase meth, Blocker would sometimes deliver it.  They also testified that on at least several occasions, Blocker used Wallace's vehicle to deliver meth.

Midland police arrested Blocker on March 9, 2011.  At the time of his arrest, the police found 3.2 grams of meth—some of which was pink—in Blocker's car along with a pipe, several cell phones, a camera, and digital scales.  One of the cell phones recovered was the one Appellants used to communicate with the cooperators before each of the controlled purchases.  Wallace was also arrested on March 9, 2011.  Detective Mobley took possession of the cell phone that was on Wallace's person at the time of his arrest.  On April 26, 2011, Detective Mobley obtained an additional cell phone that belonged to Wallace.  Detective Mobley analyzed the text messages and photographs from all of the phones he obtained from Appellants.  Certain text messages and photographs were presented at trial to demonstrate the pattern and substance of communications between Wallace, Blocker, and other individuals involved in the meth distribution conspiracy.

### ***Defense Case and Jury Verdict***

After the government rested its case, Appellants moved for judgments of acquittal and the district court denied their motions.  Wallace then called several witnesses and testified on his own behalf. Wallace explained that he was a meth addict and that prior to his arrest in this case, he used meth on a

5

daily basis.  He also admitted that he distributed small amounts of meth in order to earn money to support his habit.  He denied, however, involvement in any conspiracy to distribute meth and explained that his interaction with Blocker was purely a matter of friendship.  Wallace explained that he allowed Blocker to use his cell phone because Blocker was homeless and did not have his own means of communication.  Wallace also explained that he allowed Blocker to use his vehicle for similar reasons and claimed that he was unaware of what Blocker did or where Blocker went when he borrowed the vehicle.  On cross-examination, Wallace admitted that he distributed meth to Beshears. When asked whether he was guilty of count two (distributing meth on February 5, 2011), he responded "yes, I could be."  Blocker did not testify at trial.

The jury found Appellants guilty on all counts and the district court sentenced them to 240 months' incarceration followed by ten years' supervised release.

## II. DISCUSSION

### A.

At trial, Appellants challenged the sufficiency of the government's evidence with respect to the allegation that they conspired to possess with intent to distribute 500 or more grams of meth.  Appellants lodge the same challenge on appeal.  Because Appellants preserved the issue below, we engage in a de novo review to "determine whether a reasonable jury could find that the evidence establishes the guilt of the defendant[s] beyond a reasonable doubt." *United States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007).  We view the evidence presented at trial in the light most favorable to the government and all reasonable inferences and credibility determinations will be resolved in the government's favor. *Id.*

No. 12-51192

In order to establish a conspiracy to possess with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt: (1) that there was an agreement between two or more people to violate narcotics laws; (2) that the defendants knew about the agreement; and (3) that the defendants voluntarily participated in the conspiracy. *United States v. Valdez*, 453 F.3d 252, 256–57 (5th Cir. 2006). "The agreement may be tacit, and the jury may infer its existence from circumstantial evidence." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003) (internal quotation marks omitted).

"To be convicted of engaging in a criminal conspiracy, an individual need not know all the details of the unlawful enterprise or know the exact number or identity of all the co-conspirators, so long as he knowingly participates in some fashion in the larger objectives of the conspiracy." *Id.* at 411 (internal quotation marks omitted). The "defendant[s] may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible." *Valdez*, 453 F.3d at 257 (internal quotation marks omitted).

Appellants assert a "variance-based" challenge to their conspiracy convictions. To prevail on a variance claim, a defendant "must prove (1) a variance between the indictment and the proof at trial, and (2) that the variance affected [his] substantial rights." *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997). "The principal considerations in counting the number of conspiracies proven are (1) the existence of a common goal, (2) the nature of the scheme and (3) overlapping of participants in the various dealings." *Id.* (internal quotation marks omitted). We affirm a jury's finding that a single conspiracy existed unless, viewing the evidence in the light most favorable to the government, reasonable jurors could not make such a finding beyond a reasonable doubt. *Id.*

No. 12-51192

We conclude that based on the evidence presented at trial, a reasonable jury could find that Appellants engaged in a conspiracy to possess with the intent to distribute over 500 grams of meth. The evidence showed that Wallace facilitated and participated in numerous meth transactions in DFW. Harris testified that the first transaction he participated in with Wallace resulted in the sale of one ounce (approximately 28 grams) of meth. The next transaction was similar, systematically, but instead of purchasing one ounce, Harris purchased four ounces (approximately 112 grams). Harris testified that subsequent to the initial purchase, he and Wallace traveled to DFW between two and five times per week in August and September and purchased at least two ounces (approximately 56 grams) of meth each trip. Based upon witnesses' testimony that Wallace facilitated the distribution of at least four ounces (approximately 112 grams) of meth per week, for eight weeks, a reasonable jury could conclude that he participated in the distribution of at least 32 ounces (736 grams) of meth during the time period alleged in the indictment.

Moreover, reasonable jurors could conclude that Blocker conspired with Wallace and others to acquire meth in DFW and distribute it in Midland. The evidence presented at trial showed that during Wallace's trip to DFW in early March 2011, he acquired pink meth. Blocker distributed pink meth to law enforcement cooperators on March 8, 2011 and pink meth was found in his possession when he was arrested on March 9, 2011. The jury could reasonably infer that the pink meth Wallace acquired in DFW was the same pink meth Blocker distributed in Midland. It is well established that, for purposes of coconspirator culpability, members of a conspiracy need not be aware of the existence or activities of other members. *See Booker*, 334 F.3d at 411. Therefore, Blocker's knowledge of or participation in every aspect of the DFW Transactions is not dispositive with respect to whether a reasonable jury could find him guilty of the charged conspiracy.

Contrary to Blocker's assertions on appeal, a reasonable jury could certainly conclude that Blocker worked closely with Wallace to distribute the meth Wallace acquired in DFW. The cooperators testified that on multiple instances, when they called Wallace in an attempt to purchase meth, Blocker was the person who delivered it. They testified that occasionally, Blocker used Wallace's truck to deliver meth. The cooperators also testified about how they used the same cell phone number to reach both Wallace and Blocker to procure narcotics. Additionally, Wallace believed that Blocker had enough information pertaining to his criminal activity to provide damaging information to law enforcement. For example, after Appellants were arrested, law enforcement recorded a conversation between Wallace and Beshears during which Wallace specifically stated that "Derek won't snitch on me." A reasonable jury could glean from that statement that Blocker was familiar with, and likely a participant in, Wallace's illegal narcotics activities.

Furthermore, to the extent that Appellants argue that the evidence presented at trial varied from the indictment, we are unpersuaded. Here, the indictment alleged that between July 2010 and July 2012, Appellants conspired with each other and others known and unknown to the grand jury to distribute 500 or more grams of meth. The evidence presented at trial directly pertained to activity between July 2010 and July 2012—as alleged in the indictment. Because the evidence presented at trial remained at all times within the scope of the allegations in the indictment, Appellants' variance argument fails. *See United States v. Franklin*, 148 F.3d 451, 459 (5th Cir. 1998).

Considering all of the evidence presented at trial, we conclude that a reasonable jury could find that Appellants were guilty of the charged

conspiracy and affirm Appellants' convictions as to count one of the indictment.[2]

## B.

Prior to trial, the government provided notice of its intent to introduce evidence, pursuant to Federal Rule of Evidence 404(b), that Wallace was previously convicted in state court of possessing 1–4 grams of a controlled substance. Similarly, the government provided notice of its intent to introduce evidence that Blocker was previously convicted in state court of manufacturing 400 grams of meth. Appellants objected to the admission of the evidence but the district court overruled their objections. The district court allowed the evidence for the purpose of showing knowledge, intent, and absence of mistake. The district court also provided a limiting instruction explaining that the jury was not permitted to consider the evidence for the purpose of deciding whether Appellants committed the acts charged in the indictment.

In light of the district court's ruling, the government called as a witness Jay Stubbs, a police officer in Johnson County, Texas. Stubbs testified that he was called to the scene of a narcotics bust in July 2004 where officers discovered a meth lab inside of a residence. Wallace and Blocker were both present at the lab and officers recovered Pyrex dishes, flasks, stirring mantles, funnels, and other instrumentalities of a meth lab. Stubbs testified that Appellants both lived at the house and were arrested that day. Stubbs also told the jury that Appellants were charged with "manufacture and delivery of over 400 grams" of meth. The government later read into evidence that in relation to that incident, Wallace was convicted of "possession of 1 to 4 grams"

---

[2] To the extent that Blocker challenges the PSR's recommendation and the district court's finding that—for sentencing purposes—he was accountable for 1.7 kilograms of meth, we need not address his argument. As explained in greater detail *infra*, Blocker's conspiracy conviction under count one, coupled with his prior felony conviction, triggered a mandatory minimum sentence of twenty years' imprisonment.

of meth and Blocker was convicted of "manufacture of over 400 grams" of meth. Appellants argue on appeal that the district court erred by allowing the government to introduce evidence of this prior bad act.

A district court's decision to admit Federal Rule of Evidence 404(b) evidence in a criminal case is reviewed under a heightened abuse of discretion standard subject to a harmless error analysis. *United States v. Mitchell*, 484 F.3d 762, 774 (5th Cir. 2007). Prior bad acts are generally inadmissible but may be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See id.* (quoting Fed. R. Evid. 404(b). In order to determine whether a prior bad act is admissible, this court performs a two-part test that queries: (1) "whether the extrinsic offense evidence is relevant to an issue other than the defendant's character"; and (2) whether the probative value of the evidence is substantially outweighed by undue prejudice. *See id.* (internal quotation marks omitted). This court has held that the probative value of evidence related to a defendant's prior drug-related activity is not substantially outweighed by unfair prejudice in a drug conspiracy case. *See Booker*, 334 F.3d at 411–12 (holding that evidence of the defendant's prior possession of 178 kilograms of marijuana was not unfairly prejudicial where the defendant was charged with conspiracy to distribute cocaine base).

Wallace argues that "[t]he district court abused its discretion by allowing the government to introduce this evidence at trial because Wallace and Blocker's charge[s] and Wallace's subsequent conviction for possession of a controlled substance were not relevant to prove either knowledge or intent in a distribution or conspiracy to distribute trial." Wallace asserts that because his prior conviction was for *possession* of a controlled substance, evidence related to that conviction does not demonstrate his knowledge or intent with respect to the charged offenses—conspiracy to distribute and distribution. In

like fashion, Blocker argues that his prior conviction should not have been admitted because it could only demonstrate an intent to *manufacture* and not an intent to distribute.  Blocker also argues that the seven-year difference between his prior conviction and the charged conspiracy caused the prior conviction to lack any probative value.

In response, the government argues that the prior convictions were properly admitted because they were necessary to prove that "Wallace and Blocker knew each other as more than friends," and were familiar with each other's involvement in the meth business.  According to the government, the fact that the intent element in a manufacturing conviction or a possession conviction is different from the intent element in a conspiracy case is inconsequential.  To support its position, the government relies on *United States v. Gadison* which held that "[a] prior conviction for possession of cocaine is probative of a defendant's intent when the charge is conspiracy to distribute."  8 F.3d 186, 192 (5th Cir. 1993).

We agree with the government's position that *Gadison* controls this issue.  A prior conviction for narcotics possession or manufacture is probative to a defendant's intent when he is charged with conspiracy to distribute.  *Id.*  By pleading not guilty, Appellants placed their knowledge and intent at issue and the prior convictions were probative of Appellants' familiarity with each other's involvement in the narcotics industry.  *See Gadison*, 8 F.3d at 192 ("[The defendant] put his intent at issue when he entered his plea of not guilty to the conspiracy charge in the indictment."); *United States v. Harris*, 932 F.2d 1529, 1534 (5th Cir. 1991) (holding that "evidence of a pre-existing relationship between parties is relevant in determining whether they were engaged in a conspiracy").  We note, however, that our holding today does not render all prior narcotics convictions per se admissible in a drug conspiracy case.  The government continues to maintain the burden of demonstrating—in every

case—that a prior conviction is relevant and admissible under 404(b). *See United States v. Yeagin*, 927 F.2d 798, 803 (5th Cir. 1991) ("A trial judge faced with the problem of admissibility of other crimes evidence should exercise caution and should require the government to explain why the evidence is relevant and necessary on a specific element that the government must prove.").

To the extent that Blocker argues that his prior conviction was too remote in time to be probative to the charged conspiracy, remoteness may weaken a conviction's probative value, but remoteness has never been held to be a per se bar to the admission of a prior conviction. *See United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998) ("The age of a prior conviction has never been held to be a per se bar to its use under Rule 404."); *United States v. Cockrell*, 587 F.3d 674, 680 (5th Cir. 2009) *(*"Although remoteness of the extrinsic acts evidence may weaken its probative value, the age of the prior conviction does not bar its use under Rule 404." (internal quotation marks omitted)); *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996) (finding no prejudice from the admission of a prior conviction that occurred more than ten years before the charged offense); *see also United States v. Chavez*, 119 F.3d 342, 347 (5th Cir. 1997) (per curiam) (holding that the district court did not abuse its discretion in admitting evidence of a 15–year–old conviction). Finally, it is important to note that any unfair prejudice was assuaged by the district court's limiting instruction regarding Appellants' prior convictions. *See Booker*, 334 F.3d at 412.

No. 12-51192

Accordingly, we conclude that the district court did not abuse its discretion by allowing the government to present evidence of Appellants' prior bad act.[3]

## C.

Prior to trial, the government filed an "Enhancement Information" notifying Wallace that a conviction under Count One would result in a mandatory minimum sentence of twenty years' imprisonment because he was previously convicted of "Manufacture/Delivery of a Controlled Substance." The government's Enhancement Information was incorrect, however, because Wallace was actually convicted of "Possession of a Controlled Substance, 1–4 grams." Wallace argues on appeal, essentially, that the government's inaccurate Enhancement Information did not properly notify him of the offense for which the government intended to seek an enhancement. Therefore, according to Wallace, his due process rights were violated when the district court sentenced him based upon the enhancement.

"The sufficiency of a [21 U.S.C.] § 851(a) information is a question of law; therefore, we review the adequacy of the [g]overnment's compliance with § 851(a) de novo." *United States v. Steen*, 55 F.3d 1022, 1025 (5th Cir. 1995). Section 851(a)(1) requires that the United States Attorney file a "Notice and Information of Prior Conviction"[4] with the court before trial in order to seek

---

[3] Wallace also argues that other information related to this prior bad act—namely the fact that he was arrested and charged with manufacturing/delivering meth—should not have been admitted at trial. The government's evidence against Wallace was sufficiently overwhelming that any improper reference to his prior arrest or charge would have little impact on the jury's verdict. *See United States v. Quintero*, 872 F.2d 107, 113 (5th Cir. 1989). Accordingly, we decline to decide whether the district court erred in allowing this evidence because any alleged error does not warrant reversal. *See United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992) ("[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.") (internal quotation marks omitted) (alteration in original)).

[4] In this case, the government titled its "Notice and Information of Prior Conviction" as an "Enhancement Information."

14

potential sentence enhancements based upon prior convictions. *See United States v. Arnold*, 467 F.3d 880, 886 (5th Cir. 2006). "The information must list the previous convictions to be relied upon and the statute also provides that '[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.'" *Id.* (citing § 851(a) (alteration in original)). If the government does not comply with the statute's procedural requirements, the district court cannot enhance the defendant's sentence. *Id.* The purpose of the information is to "provide defendants with the notice necessary to allow them to challenge the contents of the . . . information." *Steen*, 55 F.3d at 1026. However, this court "will not reverse for minor deficiencies which do not prejudice the accused." *Id.* at 1027 (internal quotation marks omitted).

Relying on *Steen*, the government argues that we should focus not on whether its filing contained misinformation, but rather on whether the misinformation actually misled Wallace. The government asserts that Wallace was fully aware of the prior drug felony at issue because the contents of the government's Enhancement Information were generally accurate. The government notes that its Enhancement Information included the correct date, cause number, and jurisdiction of Wallace's prior felony drug possession conviction. The government also emphasizes that Wallace signed a stipulation at trial "that he was in fact convicted of the same possession of a controlled substance offense." Therefore, according to the government, there is no indication that Wallace was ever misled about the government's intent to seek an enhancement based upon his prior felony drug conviction such that he could not meaningfully challenge it. We agree.

*Steen* provides useful guidance on this issue. In that case, the government's Enhancement Information incorrectly described Steen's prior conviction as one for delivery of cocaine when it was actually for possession of cocaine. *Id.* at 1025. This court held that the government's misstatement was

not fatal because Steen challenged the admissibility of the prior conviction in its proper format by way of a pretrial motion. *Id.* at 1028. By doing so, Steen demonstrated that he was aware of the prior conviction at issue and was not prejudiced by the government's clerical error. *Id.* at 1028.

Here, despite the government's misstatement in its Enhancement Information, the government correctly characterized Wallace's prior conviction on several other occasions. For example, the district court heard arguments on pretrial motions during which the parties wrangled over the admissibility of Appellants' prior convictions. During the government's discussion of the prior conviction at issue, the prosecutor stated that "Mr. Wallace . . . was successful in getting it pled down to *possession of meth*, 1 to 4 grams."[5]

Much like the situation in *Steen*, Wallace's counsel's arguments at trial demonstrate his awareness of the correct characterization of Wallace's prior conviction. We made clear in *Steen* that the purpose of § 851's notice requirement is to provide the defendant with an opportunity to challenge the contents of the Enhancement Information. *Id.* at 1026. As illustrated by his counsel's arguments throughout the proceedings below, Wallace was on notice that his March 9, 2007 conviction was for possession of 1 to 4 grams of meth. Wallace's briefing fails to sufficiently explain how he was prejudiced by the government's error. Therefore, we conclude that his challenge to the

---

[5] Additionally, during arguments regarding the admissibility of testimony related to the 2004 incident involving the meth lab, Wallace's counsel argued: "And I would just add, Your Honor, it's somewhat misleading and, again, unfairly prejudicial to Mr. Wallace, because he pled. And I know it was a lesser included, but he pled to *a possession count* of 1 to 4 grams . . . ." Additionally, during Jay Stubbs's testimony, the government asked Stubbs whether Wallace pleaded guilty to "a possession count" and Stubbs responded: "[Y]es, sir." Moreover, the parties stipulated to the fact that "[o]n or about March 9, 2007, . . .Wallace was "convicted of possession of 1 to 4 grams of methamphetamine, for the offense occurring on July 30, 2004."

government's notice and ultimately to the district court's application of the sentencing enhancement is without merit.

## D.

Appellants argue on appeal that, for the purpose of applying the § 851 sentencing enhancement, the question of whether they had been convicted of prior drug felonies should have been submitted to the jury. Because Appellants failed to raise this issue before the district court, we review only for plain error. *United States v. Echeverria-Gomez*, 627 F.3d 971, 973 (5th Cir. 2010) (per curiam). Under that standard, this court will reverse an error that "is plain, affects the defendant's substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

In 2013, the Supreme Court held that any fact that increases a defendant's mandatory minimum sentence must be presented to a jury and found beyond a reasonable doubt. *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013). Prior to *Alleyne*, the Supreme Court stated in *Almendarez-Torres v. United States* that for the purposes of sentencing enhancements, a prior conviction is not a fact that must be alleged in an indictment or found by a jury beyond a reasonable doubt. 523 U.S. 224, 239–47 (1998). Appellants argue that *Alleyne* overruled *Almendarez-Torres* because *Alleyne* requires that *any fact* that increases a mandatory minimum sentence be presented to a jury. We disagree.

We conclude that Appellants' claims are foreclosed by Supreme Court and Fifth Circuit precedent. To avoid potential uncertainty as to whether *Alleyne* overruled *Almendarez-Torres*, the Supreme Court explained in a footnote that its holding in *Alleyne* did not disturb the narrow *Almandarez–Torres* exception. *See id.* at 2160 n.1. We recently acknowledged that the *Almandarez–Torres* exception survived *Alleyne*. *United States v. Akins*, 746 F.3d 590, 611 (5th Cir. 2014). The panel in *Akins* stated that "[i]t is well

established that '*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added and second alteration in original)).[6]

Therefore, the district court did not commit plain error by finding that Appellants were previously convicted of drug felonies or by sentencing them accordingly.

### E.

Blocker raises, for the first time on appeal, an ineffective assistance of counsel claim based upon "several grievous errors" committed by his trial counsel. Blocker argues that his appeal "presents the paradigmatic example" of the type of case where an ineffective assistance of counsel claim is cognizable on direct appeal.[7] The general rule in the Fifth Circuit is that ineffective assistance of counsel claims cannot be resolved on direct appeal if they were not raised before the district court. *United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014). This rule is based upon the notion that typically at this stage, the record is not sufficiently developed to allow this court to meaningfully

---

[6] Several sister circuits have also acknowledged that *Alleyne* did not overrule *Almendarez-Torres*. *See United States v. Harris*, 741 F.3d 1245, 1249 (11th Cir. 2014); *United States v. McDowell*, 745 F.3d 115, 123–24 (4th Cir. 2014); *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *United States v. Boyce*, 742 F.3d 792, 799 (7th Cir. 2014); *United States v. Blair*, 734 F.3d 218, 226–28 (3d Cir. 2013); *United States v. Carrigan*, 724 F.3d 39, 51 n.4 (1st Cir. 2013); *United States v. Rucker*, 545 F. App'x 567, 573 (8th Cir. 2013) (per curiam) (unpublished).

[7] More specifically, Blocker argues that his attorney should have objected to Officer Jay Stubbs and Detective Mobley's testimony that Blocker was arrested for a parole violation. He also claims that his attorney should have objected to Detective Mobley's testimony regarding Wallace's post-arrest statement during which Wallace arguably implicated Blocker. Blocker claims that this resulted in a *Bruton* violation. *See Bruton v. United States*, 391 U.S. 123, 136–37 (1968). Blocker also asserts that his attorney should have requested a jury instruction on "multiple conspiracies."

No. 12-51192

assess the merits of the defendant's allegations.  *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).  A case falls within the parameters of the general rule when the record does not reveal the reasons for trial counsel's decisions or shed light on alternative strategies that could have been employed below.  *See United States v. Garcia*, 567 F.3d 721, 729 (5th Cir. 2009).  However, this court recognizes that in some instances, an adequate record exists to evaluate the claims.  *Id.*; *see also United States v. Haese*, 162 F.3d 359, 363 (5th Cir. 1998) (holding that the court of appeals could determine the validity of the defendant's claims because the district court had held an evidentiary hearing on the same claims); *United States v. Thomas*, 174 F.3d 197, \*1 (5th Cir. 1999) (per curiam) (unpublished) (same).  Nevertheless, we very rarely reach the merits of an ineffective assistance of counsel claim on direct appeal.[8]

We see no reason to depart, in this case, from the general rule that ineffective assistance of counsel claims are not reviewable on direct appeal unless the issues were presented to the district court.  *See Isgar*, 739 F.3d at 841.  Here, none of Blocker's claims were presented to the district court and there is nothing in the record that sheds light on his trial counsel's reasons for making the challenged decisions.  Accordingly, we decline to address the merits of Blocker's ineffective assistance of counsel claims.

### III. CONCLUSION

For the foregoing reasons, we affirm Appellants' convictions and sentences.

---

[8] *See, e.g.*, *United States v. Montes*, 602 F.3d 381, 387–88 (5th Cir. 2010) (holding that the defendant's *Strickland* claim was premature because the record was not sufficiently developed to evaluate the claim); *United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008) (per curiam) (deciding that the defendant's claim was not "ripe for review" because the record was not sufficiently developed to allow the court to fairly evaluate the merits of the claim).